David WILLIAMS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3435.

Court of Appeals of Alaska.

Dec. 13, 1991.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

BRYNER, Chief Judge.

David Williams appeals his conviction of first-degree murder, contending that the trial court erred in denying his motion to suppress evidence and that the evidence at his trial was insufficient. We affirm.

Williams and Deborah Goodlataw were drinking heavily on the night of December 30–31, 1988, in the apartment they shared in Anchorage. Williams became angry and assaulted Goodlataw. At approximately 2 a.m., Williams called his former foster mother, Carolyn Hanthorn, and told her that he thought he had killed Goodlataw. Williams said he was not sure where he was.

Hanthorn reported Williams' call to the police. She told the police that she did not know where Williams and Goodlataw lived. She said that, a week previously, she had dropped them off at an apartment building at 200 McCarrey Street, but she was not sure if they lived there or were just visiting friends. Hanthorn also apparently told the police that Goodlataw and Williams might have a baby with them.

Between 3 a.m. and 9 a.m. that morning, the police unsuccessfully checked five or six locations where they thought Williams and Goodlataw might be, including the McCarrey Street area. At 9:30 a.m., Officer Audie E. Holloway returned to 200 McCarrey Street and inquired in the manager's office concerning Goodlataw and Williams. He learned that they were renting apartment number two.

As Holloway approached apartment two, he saw clothing on the ground outside the bedroom window. He also saw several reddish-brown stains, which appeared to be blood, on the steps leading to the door of the apartment. Holloway knocked several times and identified himself. He could hear music playing inside the apartment, but nobody answered the door.

Concerned that Goodlataw might be injured and require medical attention, Holloway secured a passkey from the manager's office and returned to the apartment. After knocking again and receiving no response, he entered. In the bedroom, he found Goodlataw, dead. Blood was spat-

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

tered throughout the room. Injuries visible on Goodlataw's face made it apparent that she had been beaten. Subsequent investigation led to Williams' arrest.

Prior to trial, Williams moved to suppress evidence derived from Holloway's entry of apartment number two. He argued that the warrantless entry was improper. The superior court denied Williams' motion, finding the entry to be justified under the emergency aid doctrine. Williams claims that the superior court erred.

■ The emergency aid doctrine is a well recognized exception to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *Schraff v. State*, 544 P.2d 834, 840–41 (Alaska 1975); *Gallmeyer v. State*, 640 P.2d 837, 841 (Alaska App.1982). Under the doctrine, the warrantless entry of a dwelling is allowed when an officer has reasonable grounds to believe that there is an immediate need to take action to prevent death or to protect persons or property from serious injury. *Gallmeyer*, 640 P.2d at 841–43.

■ For the emergency aid doctrine to be applicable in a given case, three conditions must be met:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis approximating probable cause to associate the emergency with the area or the place to be searched.

*Id.* at 842. *See also Johnson v. State*, 662 P.2d 981, 985–86 (Alaska App.1983) (listing eleven factors relevant in determining if the emergency aid doctrine applies).

Here, Williams focuses his argument on the first and third of these conditions. With respect to the first condition—reasonable grounds to believe that there was an emergency—Williams insists that no need for immediate action existed under the circumstances because the police were acting on a report that Williams had killed Goodlataw, and not on information that Goodlataw was injured. Moreover, the report had been made approximately eight hours before the search.

■ It is well settled, however, that an emergency may properly be found even when it is "much more probable that the victim is dead than that [s]he is still alive." 2 W.R. LaFave, *Search and Seizure* § 6.6(a) at 700 (2d ed. 1987) (footnotes omitted). Based on the uncertain nature of the information that Williams gave to Hanthorn and that Hanthorn passed along to the police, Holloway believed that "there was just as much a chance of there being a body in there as there would be somebody in there still alive." This belief was not unreasonable. Under analogous circumstances, the Wisconsin Supreme Court has stated: "Frequently, the report of a death proves inaccurate and a spark of life remains...." *State v. Kraimer*, 99 Wis.2d 306, 298 N.W.2d 568, 578 (1980). Moreover, in the present case, Holloway had been advised that Williams and Goodlataw might have an infant with them.

Considering the totality of the circumstances, the superior court was not clearly erroneous in finding reasonable grounds to believe that an emergency existed requiring immediate intervention.

As to the third condition of the emergency aid doctrine—some reasonable basis to associate the emergency with the place searched—Williams again focuses on the length of time that elapsed between the initial report of a possible homicide and Holloway's entry of apartment number two. According to Williams, even if there was reason to believe Goodlataw may have been injured and at home when Williams first called Hanthorn, the belief was no longer reasonable eight hours later.

■ The passage of time, however, though relevant to the possible existence of an emergency, is not determinative. *State v. Beaumier*, 480 A.2d 1367, 1373 (R.I. 1984). In deciding that an emergency might exist in Williams and Goodlataw's

apartment, Holloway acted on more than just the initial report of a possible homicide. In addition, he observed apparent blood stains on the steps of the apartment and saw clothing strewn about the yard outside the window. Although Holloway heard music from within the apartment, no one answered the door.

The superior court was not clearly erroneous in concluding that these observations, combined with the initial report of a possible homicide, provided a reasonable basis to associate the emergency with the apartment.

█ There is no indication that Holloway's entry of the apartment was primarily motivated by an intent to seize evidence or make an arrest, the remaining condition for applying the emergency aid doctrine. Accordingly, we conclude that the superior court properly found the emergency aid doctrine applicable.

Williams next contends that insufficient evidence was presented at trial. Specifically, he argues that the state failed to establish the cause of Goodlataw's death with adequate certainty to permit conviction.

█ Evidence is sufficient to submit to the jury when the record as a whole, considered in the light most favorable to the state, would permit reasonable jurors to differ on the question of whether guilt has been established beyond a reasonable doubt. *Bush v. State*, 397 P.2d 616, 618 (Alaska 1964); *Brown v. State*, 693 P.2d 324, 328 (Alaska App.1984).

█ The dispute in the present case centers on the issue of causation. Williams does not challenge the sufficiency of the evidence establishing that he assaulted and injured Goodlataw. Rather, he contends that there was inadequate evidence to prove that the injuries he inflicted to Goodlataw caused her death.

The state's primary witness on causation was Dr. Michael Propst, the forensic pathologist who examined Goodlataw's body. According to Propst, the autopsy he performed revealed multiple blunt-force external injuries to Goodlataw's face and head, indicating that she had recently been beaten. These injuries corresponded to potentially fatal internal injuries to Goodlataw's brain.

Propst further testified, however, that his autopsy revealed that Goodlataw's blood alcohol content at death was .665 percent, a potentially lethal level.

According to Propst, either the blunt-force injuries or the alcohol, standing alone, might have been survivable, but either might also have been fatal. Although Propst was unable to prioritize between the injuries and the alcohol in terms of their relative significance, he expressed the opinion that the two combined to cause Goodlataw's death. Propst believed that even if Goodlataw could not have survived the alcohol she consumed, her injuries would have been a "significant contributing factor" in her death.

Propst specifically expressed the opinion that Goodlataw's injuries "definitely" contributed to her death. When pressed on cross-examination as to whether he was convinced to a reasonable medical certainty that Goodlataw's injuries contributed to her death, Propst answered: "Yes, I am. In my opinion the blunt force injuries played at least a role in the death." Pressed again on the issue of reasonable medical certainty on re-direct examination, Propst reiterated: "In my opinion the blunt force injuries that Deborah Goodlataw received were a cause of her death."

In response to Propst's testimony, Williams called Dr. Michael Clark, another pathologist, who testified that, in his opinion, Goodlataw would likely have died as the result of the alcohol she ingested, regardless of whether she had sustained physical injuries. Although acknowledging that her injuries would have hampered her ability to survive the alcohol to at least some extent, Clark characterized them as unlikely to have resulted in death in and of themselves.

The state countered Clark's testimony by calling Drs. Donald Rogers and Richard Brodsky on rebuttal. Rogers, also a forensic pathologist, echoed Propst's view that both the alcohol and the blunt-force injuries

had combined to cause Goodlataw's death. Rogers also expressed the belief that the amount of alcohol Goodlataw had consumed was potentially survivable. Brodsky, an Anchorage physician with experience in providing emergency care for persons with elevated blood alcohol levels, corroborated the view that Goodlataw could potentially have survived had she not been beaten.

■ Viewing the totality of this evidence in the light most favorable to the state, we believe that reasonable jurors could have concluded that the state met its burden of proof on the element of causation. The state was under no obligation to prove that the injuries Williams inflicted were the sole cause of Goodlataw's death:

> A criminal defendant can be held responsible only for injuries that "result from" or are "caused by" his conduct. But the defendant's conduct need not be the sole factor in producing the injury. Rather, the test is whether the defendant's conduct was a "substantial factor" in bringing about the result.

State v. Malone, 819 P.2d 34, 36 (Alaska App., 1991) (citations omitted).

The expert testimony at trial strongly supported the conclusion that Goodlataw's death resulted from the combined effects of alcohol and her blunt-force injuries. While neither Propst nor Rogers could pinpoint the importance of the injuries vis-a-vis the alcohol, both clearly viewed them as a substantial causal factor. Propst explicitly framed his opinion on this issue in terms of reasonable medical certainty.

Given these circumstances, Williams' reliance on Jennings v. State, 404 P.2d 652, 654 (Alaska 1965), is misplaced. In Jennings, the Alaska Supreme Court indicated, in passing, that a judgment of acquittal would be appropriate in a case where the state failed to show which of two alternative potential causes actually resulted in the victim's death. In contrast, when the evidence in the present case is viewed in the light most favorable to the state, it establishes that Goodlataw's death resulted not from one of two mutually exclusive causes but rather from the combined effect of alcohol and blunt-force injuries.

In fact, the circumstances of this case are virtually indistinguishable from those considered by the Alaska Supreme Court in Armstrong v. State, 502 P.2d 440, 443–46 (Alaska 1972). In Armstrong, the victim died of asphyxia as a direct result of a deep state of unconsciousness. Expert testimony indicated that the victim had suffered a severe beating and was also severely intoxicated. The state's expert witness was unable to say which factor was more significant in producing the unconscious state that resulted in death, but he believed both had played a significant role.

In affirming the conviction, the court in Armstrong rejected an argument similar to Williams', holding:

> In this case expert testimony served to reveal the physiological relationships relevant to [the victim's] death; once these were explained, the jury was competent to make an independent determination of cause of death on the basis of all relevant evidence before it.

Our study of the record of the trial below convinces us that sufficient evidence was produced to present a jury question on the issue of cause of death. Expert testimony presented by both parties established asphyxiation as the primary cause of death. Dr. Rogers indicated a causal connection between the beating and asphyxiation, namely as a factor which, along with extreme intoxication, contributed to the depth of the reflex-inhibiting unconsciousness. Even the defense expert witness ... admitted that the head injuries were a "minor" contribution to [the victim's] death, being sufficient to "cause a certain additional grogginess...." Additionally, the jury had before it the testimony of Officer Moerlins who detailed the condition of the trailer and deceased as he found them. The extent of the beating suffered by [the victim] was also illustrated by photographs. Viewed most favorably to the state, this evidence was sufficient to permit the jury to conclude, with the strength of conviction required for a

guilty verdict, that the acts of appellant contributed to [the victim's] demise.

*Id.* at 446 (footnote omitted).[1]

The conclusion reached by the supreme court in *Armstrong* is equally applicable here. We hold that the trial court did not err in denying Williams' motion for a judgment of acquittal.

The conviction is AFFIRMED.

---

1. A dissent by two justices in *Armstrong* agreed with the majority's view of the applicable law of causation but found the expert testimony at trial equivocal on the issue of whether the victim's unconsciousness resulted from the joint effects of alcohol and the assault-related injuries. *Id.*

at 452. Because we find unequivocal evidence in the present case to support the view that Goodlataw's death resulted from the combined effect of alcohol and assault-related injuries, Williams' claim would not succeed, even under the dissenting opinion in *Armstrong*.