**Carol Y. PEASE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7458.

Court of Appeals of Alaska.

July 20, 2001.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Carol Y. Pease was convicted of possessing 25 or more marijuana plants, a violation of AS 11.71.040(a)(3)(G). Although Pease had only 19 marijuana plants growing in her house, she also had another 33 pots containing the dead remnants (stalk and root ball) of previously harvested marijuana plants. Over Pease's objection, the jury was instructed that these 33 remnants constituted "marijuana plants" for purposes of assessing Pease's guilt—that "it does not matter whether the plant is alive or dead." This was error. As used in AS 11.71.040(a)(3)(G), the term "marijuana plants" refers solely to live plants. Because the jury instructions allowed the jury to convict Pease based on her possession of the 33 dead remnants, Pease's conviction must be reversed.

*The statutory history of AS 11.71.040(a)(3)(G)*

Pease was charged with violating AS 11.71.040(a)(3)(G), which makes it a felony to possess "25 or more plants of the genus cannabis". This statute was enacted in 1994 for the purpose of solving an administrative

problem that the police faced under former law.

Prior to 1994, there was only one statute that provided a felony penalty for simple possession of marijuana. That statute was (and is) AS 11.71.040(a)(3)(F), which forbids a person from possessing "one or more preparations, compounds, mixtures, or substances of an aggregate weight of one pound or more" of marijuana.[1]

But the term "marijuana" does not include the whole plant. Rather, as defined in AS 11.71.900(14), "marijuana" means only

the seeds, and leaves, buds, and flowers of the plant (genus) Cannabis, whether growing or not; it does not include the resin or oil extracted from any part of the plants, [and] it does not include the stalks of the plant[.]

Moreover, a companion statute, AS 11.71.080, declares that

[f]or purposes of calculating the aggregate weight of a live marijuana plant, the aggregate weight shall be the weight of the marijuana when reduced to its commonly used form.

Because of these statutes, the police faced a problem when they raided a marijuana farm and found only growing, unharvested plants. To determine whether the grower possessed one pound or more of marijuana, the police could not simply cut down the plants and weigh them. In practice, the police had to finish the job that the grower had begun—that is, they had to cut down the plants, allow them to dry, and then cut the leaves, buds, and flowers from the stalks—if they were to prosecute the grower under AS 11.71.040(a)(3)(F).

The police asked the legislature to amend the law so that they could avoid this time-consuming process.[2] The commander of the Ketchikan Police Department told the Senate Judiciary Committee of an instance in which the police discovered a 200–plant marijuana operation; according to the Ketchikan commander, it took the police team some 32 officer-hours to process the plants. This, he said, was "a real waste of resources".[3]

To solve this problem, the police and the Department of Law proposed two changes to the statutes dealing with marijuana. First, AS 11.71.080 would be amended to specify that, for purposes of calculating the weight of a live marijuana plant, the aggregate weight would no longer be "the weight of the marijuana when reduced to its commonly used form", but rather the weight "of the entire marijuana plant, excluding the root wad and any growing attachments, at the time of harvest or seizure."[4] Second, the definition of "marijuana", AS 11.71.900(14), would be expanded to include the stalks of the plant.[5]

Assistant Attorney General Margot Knuth explained that, under these proposed changes, marijuana plants would still have to be harvested and dried, but the police would no longer have to separate out the stalks.[6] She also pointed out that under the proposed changes, by including the stalk in the measurement, the felony weight of one pound would be reached sooner.[7]

Senator Dave Donley agreed that "the [current] process was ridiculous" and "a waste of resources", but he expressed con-

---

1. To be precise, the statute forbids possession of substances weighing one pound or more "containing a schedule VIA controlled substance". However, marijuana is the only controlled substance listed in schedule VIA. *See* AS 11.71.190(b).

2. *See* Minutes of the House Judiciary Committee, April 20, 1994, testimony of Joe Ambrose, chief of staff to Senator Robin Taylor (Tape 94–62, Side A, number 825).

NOTE: These committee minutes, as well as the other committee minutes and draft bills that we refer to in the footnotes of this opinion, are all available through the Alaska Legislature's "BASIS" (Bill Action and Status Inquiry System)

web site for the 18th legislature: *www.legis.state.ak.us/basis18.htm*

3. Minutes of the Senate Judiciary Committee, March 11, 1994, testimony of Lt. Charles Mallott (Tape 94–15, Side A, number 103).

4. SB 332, 18 Legis., 2nd session (1994), lines 8–9.

5. *Id.*, lines 16–17.

6. *See* Minutes of the Senate Judiciary Committee, March 11, 1994, testimony of Margot Knuth (Tape 94–15, Side A, number 252).

7. *See id.*

cern that, by amending the law in this way, the legislature might be inappropriately imposing felony penalties on a large number of people whose offense, under current law, would only be a misdemeanor.[8] He suggested that it might be better to outlaw possession of a specified large number of marijuana plants.[9] Committee Chair Robin Taylor then asked Ms. Knuth to work with the committee staff to draft a revised proposal along these lines.[10]

The result was Judiciary Committee Substitute for Senate Bill 332, "An Act relating to the possession of 25 or more marijuana plants". This reworked bill made no change to the statutory definition of marijuana or to the statute defining the aggregate weight of live marijuana plants. Instead, the bill added a new subsection to AS 11.71.040—subsection (a)(3)(G)—that prohibited possession of "25 or more plants of the genus cannabis".[11]

When the House Judiciary Committee took up consideration of the reworked bill, Joe Ambrose (chief of staff for Senator Robin Taylor) told the committee that CSSB 332 provided the police with a theory of prosecution that was an alternative to measuring the aggregate weight of live marijuana plants as prescribed in AS 11.71.080.[12] Assistant Attorney General Margot Knuth, who was there to support the bill that she had helped draft, explained that CSSB 332 was designed "to take our law enforcement officers out of the business of drying marijuana".[13] In other words, officers could simply seize and count the growing plants rather than harvesting and processing those plants, then weighing the resulting leaves, buds, and flowers as required by existing law.

Ms. Knuth explained that the Senate drafters had tried to write a provision that more or less paralleled the "one pound or more" prohibition contained in subsection (a)(3)(F). She told the House committee that the drafters picked the figure of 25 plants because "25 plants [of] moderate growth will weigh ... over a pound".[14]

Committee Chair Brian Porter asked Ms. Knuth how the proposed law would apply in a situation where the police found immature plants. Ms. Knuth replied that the bill, as drafted, did not require the plants to be at any particular stage of maturity. She added that she believed it was fair to include all marijuana plants, no matter at what stage of growth, because "every baby marijuana plant has the potential of becoming a nice, productive, healthy plant."[15] Representative Porter seconded Ms. Knuth's remark. He declared that the bill should include even "a little tiny plant" because "from little tiny plants, great big plants grow; and somebody should not get off just because you bust them too quick."[16]

The House ultimately approved CSSB 332, and it was signed into law as SLA 1994, ch. 53, § 1.

*Why we interpret subsection (a)(3)(G) to require proof of 25 living plants*

As explained above, the jury in Pease's case was instructed that the 33 remnant marijuana plants in her possession—remnants that consisted only of dead stalks and root wads—were nevertheless "plants of the genus cannabis" for purposes of AS 11.71.040(a)(3)(G). That is, the jurors were

---

**8.** *See* Minutes of the Senate Judiciary Committee, March 11, 1994, remarks of Senator Donley (Tape 94–15, Side A, number 452).

**9.** *See id.* at 550.

**10.** *See* Minutes of the Senate Judiciary Committee, March 11, 1994, remarks of Senator Taylor (Tape 94–15, Side A, number 550).

**11.** *See* CSSB 332 (Judiciary), 18th Legis., 2nd session (1994), line 14.

**12.** *See* Minutes of the House Judiciary Committee, April 20, 1994, testimony of Joe Ambrose (Tape 94–62, Side A, number 825).

**13.** *See* Minutes of the House Judiciary Committee, April 20, 1994, testimony of Margot Knuth (Tape 94–62, Side A, number 825).

**14.** *See id.* at 855.

**15.** *See id.* at 825.

**16.** *See* Minutes of House Judiciary Committee, April 20, 1994, statement of Chairman Brian Porter (Tape 94–62, Side A, number 850).

told that "it [did] not matter whether the plant[s] [were] alive or dead."

The State contends that, in everyday usage, the word "plant" includes both living and dead plants, and thus the jury instructions accurately conveyed the "plain meaning" of the statute. This contention appears dubious. When someone asks a gardener how many tomato plants they have in their garden, the person posing this question is normally not seeking information about the number of stumps of dead plants remaining from previous years. Likewise, when a person asks their spouse whether they think a rosebush would look good in their yard, one would not expect the couple to be contemplating the effect that a dead rosebush would have on their landscaping.

From these examples, it is clear that the word "plant"—or, more specifically, the phrase "plants of the genus cannabis"—must be interpreted in context. In this case, the relevant context is the legislative history of AS 11.71.040(a)(3)(G). From our review of that legislative history, we conclude that the legislature was thinking of live plants, not dead ones.

As explained in the previous section of this opinion, the impetus for subsection (a)(3)(G) was the difficulty that the police faced when they seized growing plants from a marijuana cultivation operation. Under prior law, the officers had to spend dozens of hours harvesting the plants, drying them, then stripping the leaves, buds, and flowers from the stalks (to reduce the marijuana to its "commonly used form"). The aim of subsection (a)(3)(G) was to give the police an alternative method of charging the marijuana grower, a method that would "take ... law enforcement officers out of the business of drying marijuana".[17]

The problem, as it was described to the legislature, was to find a way to eliminate the task the police faced when they seized dozens (or hundreds) of live marijuana plants from a marijuana-growing operation. Further, the

description of the proposed solution (changing the law so that police officers would no longer have to dry the seized marijuana) also seems to focus on the problem of live plants—for, as a general matter, only live plants need to be harvested and dried. Moreover, two other salient portions of the committee discussion bolster the conclusion that the legislature was thinking of living plants.

First, when Assistant Attorney General Knuth was asked why the drafters of CSSB 332 picked "25" as the number of marijuana plants that would trigger felony penalties, she explained that the Senate drafters had tried to write a provision that more or less paralleled the "one pound or more" prohibition contained in the existing law, subsection (a)(3)(F). According to Ms. Knuth, the consensus was that 25 plants of moderate growth would yield over a pound of marijuana.[18]

■ Ms. Knuth's explanation is clearly inconsistent with the State's present argument that stumps of stalks and root wads should be counted as "marijuana plants". The stalks and roots of the cannabis plant do not qualify as "marijuana" under AS 11.71.900(14). Thus, Ms. Knuth could not have been speaking of such remnant plants when she told the House Judiciary Committee that CSSB 332, the proposed law outlawing the possession of 25 cannabis plants, would be roughly equivalent to the current law that outlawed possession of one pound or more of marijuana. Ms. Knuth's explanation makes sense only if she and the other drafters of the bill were thinking of whole plants.

Second, when Representative Porter asked Ms. Knuth whether the proposed law would apply if the police seized 25 immature plants, Ms. Knuth said yes, it would—and she declared that this result was fair because "every baby marijuana plant has the potential of becoming a nice, productive, healthy plant."[19] Representative Porter quickly added his assent to this view, declaring that

**17.** Testimony of Margot Knuth, *supra* footnote 13.

**18.** Testimony of Margot Knuth, *supra* footnote 14.

**19.** Testimony of Margot Knuth, *supra* footnote 15.

"from little tiny plants, great big plants grow; and somebody should not get off just because you bust them too quick."[20]

Again, these comments are inconsistent with the State's argument that dead remnant plants qualify as "plants of the genus cannabis" for purposes of subsection (a)(3)(G). Both Ms. Knuth and Representative Porter were obviously talking about living plants. More importantly, the rationale they offered for endorsing CSSB 332, despite the bill's failure to specify any particular stage of plant maturity, makes sense only in the context of living plants.

■ For these reasons, we conclude that AS 11.71.040(a)(3)(G) requires proof that the defendant possessed 25 or more living marijuana plants.

■ This is not to say that the crime can be proved only if the police find 25 or more live marijuana plants when they search the premises. In a prosecution under AS 11.71.040(a)(3)(G), the State must establish that the defendant simultaneously possessed 25 or more living marijuana plants. Obviously, a defendant's possession of dead remnant plants is circumstantial evidence that, earlier, the defendant possessed these plants when they were alive. Thus, a jury might reasonably find a defendant guilty if, for example, the police discover 20 large growing plants and another ten that were apparently just harvested.

But the jury must be convinced beyond a reasonable doubt that, at some point in time, the defendant simultaneously possessed at least 25 live marijuana plants. The verdict in Pease's case is flawed because the jury was incorrectly told that the 33 dead remnant plants counted toward the requisite 25, without regard to when those 33 remnants were last alive or whether Pease ever possessed them when they were alive.

It is conceivable that, had the jury been told to view the dead remnants as circumstantial evidence of Pease's earlier possession of live plants, the jury might have found that Pease simultaneously possessed 25 or more live plants. But the evidence was far from conclusive on this point. The State presented no evidence regarding how long the 33 remnants had been dead, or if there was ever a time when all 33 of them were simultaneously alive. Thus, it is possible that the 33 remnants represented two or more prior harvests, and that Pease never possessed more than 15 to 20 live marijuana plants at any one time.

More important, the jurors never considered these factual issues—because, under the instructions given to them, these issues were irrelevant. The jury was told that the law made no distinction between live marijuana plants and dead marijuana plants. Accordingly, we must reverse Pease's conviction.

### Conclusion

We conclude that the legislature intended AS 11.71.040(a)(3)(G) to require proof that the defendant simultaneously possessed 25 or more live plants of the genus cannabis. Pease's jury was incorrectly told that both living and dead marijuana plants count equally toward the necessary 25. Because the jury was misinstructed on this essential element of the crime, the judgement of the superior court is REVERSED.

**20.** Statement of Representative Porter, *supra* footnote 16.