**Darrin HOTRUM, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9020.

Court of Appeals of Alaska.

March 10, 2006.

---

8.   527 P.2d 472 (Alaska 1974).

9.   *Id.* at 474.

10.  *Id.*

11.  *Id.* at 473.

12.  *Id.*

13.  *Id.* at 474.

14.  *Id.*

15.  46 P.3d 949, 953–56 (Alaska 2002).

16.  *Id.* at 957.

Verne E. Rupright, Wasilla, for the Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Darrin Hotrum was convicted of misconduct involving a controlled substance in the fourth degree, a class C felony, for possessing more than twenty-five marijuana plants.[1] Hotrum entered a no contest plea pursuant to *Cooksey v. State*,[2] preserving two issues for appeal. In his first issue, Hotrum claims that the police found the marijuana plants following an unlawful warrantless entry and search of his residence. We uphold Superior Court Judge Eric Smith's ruling that the police entry and search of Hotrum's residence was justified under the emergency aid

---

1. AS 11.71.040(a)(3)(G), (d).

2. 524 P.2d 1251 (Alaska 1974).

exception to the general warrant requirement.

In his second issue, Hotrum points out that, although he possessed more than twenty-five marijuana plants, which under the Alaska Statutes constitutes a felony, he actually possessed little more than two ounces of dried marijuana. He argues that the Alaska Statutes are in direct conflict with the Alaska Supreme Court's decision in *Ravin v. State.*[3] In *Ravin,* the Alaska Supreme Court held that the privacy provision of the Alaska Constitution, article I, § 22, protects the right of an adult to possess a small amount of marijuana in his home for personal use.[4] Hotrum contends that, because the plants he possessed totaled only a little over two ounces of marijuana, prosecution of his case contravenes *Ravin.* We conclude that the legislature has the power to set reasonable limits on the amount of marijuana that people may possess for personal use in their homes. We therefore conclude that criminalization of the possession of twenty-five or more marijuana plants, regardless of the weight of the marijuana in its processed form, does not conflict with *Ravin.*

*Factual and procedural background*

On October 3, 2003, Alaska State Trooper dispatch received a 911 call reporting that there were gunshots and yelling coming from a red house off Piccadilly Road in Houston, Alaska. At approximately 10:19 p.m., a dispatcher relayed this information to Alaska State Troopers Howard Anthony Peterson and Odean Farnhan Hall III. Troopers Hall and Peterson responded to the call.

The troopers parked their patrol vehicle down the street from where they believed the house was located. As the troopers began their approach to the house they contacted a man approximately two houses down from the suspected residence. The man told the troopers that gun shots and yelling were coming from the red house two houses down on the right. From the roadway the troopers could hear very loud music coming from the house.

The troopers went down the roadway and approached the house. They saw vehicles in the yard and light emanating from an arctic entryway. The door was standing wide open and there was a key in the deadbolt with the lock turned. Trooper Peterson and Trooper Hall made repeated attempts to announce their presence, yelling "state troopers. Is anybody there?" The troopers made attempts to yell over the music and to announce themselves between songs. There were lights on in the house. The troopers had requested backup that arrived as they were trying to make contact through the open entryway.

Trooper Hall testified that, based on the information he had available to him at that point, he was not sure if something had happened inside or outside the home or whether someone needed his assistance, but that he believed that something was going on in the house. He added that when walking up to the house he did not know whether there was an ongoing emergency. But given the fact that there had been a report of shots fired and yelling, and the presence of a door standing wide open in the middle of the night, he felt that something was going on that required him to ensure that nobody was being harmed.

At this point Troopers Hall and Peterson, along with Alaska State Troopers Paul Anthony Wezgryn and Mike Ingram, entered the house with their weapons drawn. Upon entry into the arctic entryway, Trooper Peterson observed a doorway covered with a blanket directly in front of him. Behind the blanket was a closed door. To the left of Trooper Peterson was an open hallway that led to the living room with a loft and a kitchen in the back. Trooper Peterson instructed Trooper Ingram to check the doorway with the blanket covering it while he, Trooper Wezgryn and Trooper Hall went left, into the living room area. Behind the blanket and closed door Trooper Ingram discovered forty-three live marijuana plants.

In the living room, Troopers Peterson and Hall found a bed with two feet protruding from under a sheet. With the music blaring,

3.   537 P.2d 494 (Alaska 1975).

4.   *Id.* at 504.

Trooper Hall announced their presence and there was no reaction. Trooper Peterson testified that at that point he believed they were dealing with a homicide. The troopers noticed a semi-automatic handgun and some bullets lying near the bed. With their weapons trained on the bed, the troopers shut off the stereo and removed the sheet from the body it was covering and again announced their presence. The troopers then "cleared" the rest of the room, checking the spaces that their line of sight did not cover. The individual, who turned out to be sleeping, was Darrin Hotrum, who was fully clothed and lying face up. Upon waking, Hotrum immediately asked the troopers why they were there and told them that they were not allowed in his home, and that it was a private home.

### Subsequent proceedings

The troopers arrested Hotrum at his residence. The State charged him with several offenses arising out of his possession of marijuana.

Hotrum filed a combined motion to suppress the evidence and to dismiss the indictment. In his motion, Hotrum claimed that the troopers' warrantless entry of his home was illegal because it failed to fall within any of the recognized exceptions to the warrant requirement. Hotrum filed an additional motion to dismiss on the ground that the warrantless seizure of his marijuana plants had resulted in the recovery of only 2.02 ounces of consumable marijuana. He argued that his possession of this amount of marijuana was within the protection of *Ravin*.

Judge Smith conducted an evidentiary hearing. Following the hearing, he denied Hotrum's motion to suppress. Judge Smith found that the troopers' actions were reasonable under the emergency aid doctrine. Judge Smith reasoned that there was proba-

ble cause to believe that the emergency was located at Hotrum's residence based on the report from trooper dispatch and the gentleman on the road, and the loud music and open door. Additionally, Judge Smith concluded that the search was not a pretext to conduct a warrantless search. Judge Smith also denied Hotrum's claim that his conduct was protected under *Ravin*.

Hotrum later entered a no contest plea to a single count of misconduct involving a controlled substance in the fourth degree for possession of twenty-five or more marijuana plants. This appeal followed.

*Why we uphold Judge Smith's finding that the police search of Hotrum's residence was lawful under the emergency aid doctrine*

■■■ The emergency aid doctrine is a well-recognized exception to the general rule that the police need a warrant to conduct a search.[5] The emergency aid doctrine allows the warrantless entry of a dwelling "when an officer has reasonable grounds to believe that there is an immediate need to take action to prevent death or to protect persons or property from serious injury." [6]

For the emergency aid doctrine to be applicable in a given case, three conditions must be met:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis approximating probable cause to associate the emergency with the area or the place to be searched.[7]

5. *Williams v. State*, 823 P.2d 1, 3 (Alaska App. 1991) (citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *Schraff v. State*, 544 P.2d 834, 840–41 (Alaska 1975); *Gallmeyer v. State*, 640 P.2d 837, 841 (Alaska App.1982)).

6. *Williams*, 823 P.2d at 3 (citing *Gallmeyer*, 640 P.2d at 841–43).

7. *Williams*, 823 P.2d at 3 (citing *Gallmeyer*, 640 P.2d at 841–43 and *Johnson v. State*, 662 P.2d 981, 985–86 (Alaska App.1983) (listing eleven factors relevant in determining if the emergency aid doctrine applies)).

■ In his findings, Judge Smith concluded that the troopers had reasonable grounds to believe, and did believe, that when they approached Hotrum's residence there was an emergency that required them to enter the residence and investigate. Judge Smith's findings are supported by the record and support his decision to deny Hotrum's motion to suppress.

*Why we reject Hotrum's claim that his possession of marijuana was protected by the supreme court's decision in Ravin v. State*

In *Ravin*, the Alaska Supreme Court held that the privacy provision of the Alaska Constitution, article I, § 22, protected the right of an adult to possess a limited amount of marijuana in his home for purely personal non-commercial use.[8] The court stated that its decision did not protect possession of marijuana in the home in amounts which were indicative of an intent to sell the drug.[9]

In 1982, the legislature adopted statutes which modified the state's marijuana possession laws.[10] These statutes prohibited a person from possessing four ounces or more of marijuana but did not criminalize possession of less than four ounces.[11] The commentary to the legislation stated that the legislators' intent was to define the amount of marijuana an adult could possess in the home without violating the law.[12]

In *Walker v. State*,[13] we had before us a case where the defendant was convicted of possession of more than one-half pound of marijuana.[14] We upheld that conviction, holding that the legislature could reasonably regulate the personal possession of marijuana in the home over certain amounts. We held that this regulation did not conflict with *Ravin* even if the defendant had no intent to sell the drug.[15]

In *Pease v. State*,[16] we discussed the legislative history behind the statute that criminalized the possession of twenty-five or more marijuana plants.[17] That statute was enacted after police officers asked the legislature to address the problem police faced after they raided a marijuana grow and found only growing, unharvested plants.[18] Specifically, under the statutory definition of "marijuana," the police could not simply cut the plants down and weigh them.[19] To establish the weight of marijuana seized under the statute, the police had to cut down the plants, dry them, and then cut the leaves, buds, and flowers from the stalks.[20] The legislature's solution was to enact AS 11.71.040(a)(3)(G), the statute under which Hotrum was prosecuted, which prohibits possession of twenty-five or more marijuana plants.[21] The House Judiciary Committee adopted the suggestion of an assistant attorney general that twenty-five average marijuana plants would, after processing, weigh over one pound.[22] The assistant attorney general specifically addressed the question of whether it would be

8. 537 P.2d at 504.

9. *Id.* at 511.

10. *Walker v. State*, 991 P.2d 799, 802 (Alaska App.1999).

11. Former AS 11.71.060(a)(4).

12. Commentary and Section Analysis for the 1982 Revision of Alaska's Controlled Substance Laws, Conference Committee Substitute for Senate Bill No. 190 at 19.

13. 991 P.2d 799.

14. *Id.* at 803.

15. *Id.*

16. 27 P.3d 788 (Alaska App.2001).

17. *See* AS 11.71.040(a)(3)(G).

18. *Pease*, 27 P.3d at 789.

19. *See* AS 11.71.900(14) ("marijuana" means only "the seeds, and leaves, buds, and flowers of the plant (genus) Cannabis, whether growing or not; it does not include the resin or oil extracted from any part of the plants, [and] it does not include the stalks of the plant[.]"); AS 11.71.080 ("[f]or purposes of calculating the aggregate weight of a live marijuana plant, the aggregate weight shall be the weight of the marijuana when reduced to its commonly used form.").

20. *Pease*, 27 P.3d at 789.

21. *Id.* at 790.

22. *Id.*

fair to prosecute a person for possession of twenty-five small marijuana plants. She suggested that the small plants had the potential of growing into much larger plants, and therefore the fact that the small plants did not weigh much and did not produce very much usable marijuana was immaterial.[23] It appears that the legislature adopted this reasoning.

In *Noy v. State*,[24] we confronted a statute that was enacted when the voters of Alaska approved a ballot proposition that amended the Alaska statutes to criminalize possession of any amount of marijuana.[25] We concluded that this statute was unconstitutional because it prohibited the possession of small amounts of marijuana by adults in their homes for personal use.[26] Therefore, it contravened the constitutional right of privacy as interpreted by the Alaska Supreme Court in *Ravin*.[27] After finding the statute unconstitutional, we left standing the former statutes that the initiative had superseded.[28]

Hotrum concedes that the troopers found forty-three live marijuana plants in his home. Under AS 11.71.040(a)(3)(G), Hotrum's possession of more than twenty-five live marijuana plants made his offense a class C felony. But Hotrum points out that when the troopers processed these plants by drying them, stripping them, and weighing the leaves and buds, the total amount of marijuana he possessed weighed only slightly more than two ounces. Hotrum argues that, but for AS 11.71.040(a)(3)(G), his possession of this amount of marijuana would not be a crime. And had he been convicted of possession of four ounces or more of marijuana under the other statutes, his offense would have been a class B misdemeanor.[29] Hotrum argues that prosecuting him for possessing approximately two ounces of marijuana is inconsistent with *Ravin* and *Noy* because it

constitutes a prosecution for possession of a small amount of marijuana in his home for personal use.

In *Ravin*, the Alaska Supreme Court did not set out any specific amount of marijuana that an adult could lawfully possess. In *Walker*, we recognized that "the legislature nevertheless has the power to set reasonable limits on the amount of marijuana that people can possess for personal use in their homes."[30] As we have previously discussed, the legislature has passed statutes intended to provide a clear line so that the citizens of the state will know what conduct is prohibited.[31] We have generally found the legislature's efforts to be consistent with *Ravin*.[32]

In particular, in *Pease*, we discussed the legislative history of the statute that made a felony offense of possession of twenty-five or more marijuana plants. The legislative history showed the legislature considered the possibility that a person might possess twenty-five or more marijuana plants but that these plants might constitute a small amount of marijuana. The legislature concluded that the small marijuana plants could grow to become a substantial amount of marijuana. The legislature decided that the defendant should not benefit from the fact that he was prosecuted before the plants could grow to that level.[33] We conclude that this is a judgment that the legislature was entitled to make. In drafting AS 11.71.040(a)(3)(G), the legislature adopted a clear and objective line which appears to be consistent with the Alaska Supreme Court's *Ravin* decision.

The judgment of the superior court is AFFIRMED.

23. *Id.*

24. 83 P.3d 538 (Alaska App.2003).

25. *Id.* at 542.

26. *Id.*

27. *Id.*

28. *Id.* at 543.

29. AS 11.71.060(a)(1), (b).

30. 991 P.2d at 802.

31. *Id.* at 803.

32. *Id.; Noy,* 83 P.3d at 543.

33. *Pease,* 27 P.3d at 790.