**CITY OF SKAGWAY, Appellant/ Cross–Appellee,**

v.

**Terry ROBERTSON, d/b/a Skaguay Tour Company, and David A. Lee, d/b/a Southeast Tours, Appellees/ Cross–Appellants.**

Nos. S–11702, S–11741.

Supreme Court of Alaska.

Sept. 22, 2006.

Robert P. Blasco and Amy Gurton Mead, Robertson, Monagle & Eastaugh, Juneau, for Appellant and Cross–Appellee.

Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellee and Cross–Appellant Robertson.

Philip M. Pallenberg, Faulkner Banfield, P.C., Juneau, for Appellee and Cross–Appellant Lee.

James N. Leik, Perkins Coie LLP, Anchorage, and Paul F. Eckstein, Timothy J. Franks, and Christopher S. Coleman, Perkins Coie Brown & Bain P.A., Phoenix, Arizona, for Amicus Curiae City of Sedona, Arizona.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

In May 2003 the City of Skagway adopted a municipal ordinance "directed solely to the regulation of the time, place, and manner of certain limited forms of commercial speech." [1] In order to curb the proliferation of aggressive sales tactics aimed at pedestrians and tourists and to preserve the historic character of the town, the ordinance confines person-to-person solicitation activities within the historic district of Skagway to enclosed structures or to areas containing at least 200 square feet of vending space. [2] Appellants Terry Robertson and David Lee, operators of tour companies in Skagway which utilize off-premises solicitation, challenged the ordinance in the superior court as unconstitutional. The superior court determined that, although the ordinance was an appropriate way to restrict commercial speech, "its sweep is so broad that it impermissibly affects protected speech as well." Because we believe that the ordinance can be construed in a manner which limits its application to commercial speech, we reverse.

## II. FACTS AND PROCEEDINGS

### A. Facts

Appellants David Lee and Terry Robertson both sell tours to visitors to Skagway. Robertson characterizes his sales strategy as "outcry," which "works by sales persons stationed near City sidewalks approaching pedestrians located on or near City sidewalks, describing the various tours available and convincing the pedestrians to purchase a tour." Lee has rented locations along Broadway, the main commercial street in Skagway, to sell his tours, but does not characterize his business as off-premises canvassing.

1. SMC 5.20.010(A)(1).

2. SMC 5.20.010.

3. SMC 5.20.010(A)(1).

4. *Id.*

The City of Skagway passed Municipal Code Ordinance 5.20.010 in May 2003. The ordinance was passed

> [b]ecause of the proliferation of ... off-premises solicitation ... and the fact that the volume of such activities has resulted in complaints by pedestrians and tourists about the aggressive and persistent actions of such persons attempting to engage them in a conversation in order to consummate a business transaction[.] [3]

It was intended that the ordinance "preserve and protect the unique charm and small town character of the Historic District, which serves as a major attraction to thousands of tourists every year." [4]

The ordinance specifies that it is

> directed solely to the regulation of the time, place, and manner of certain limited forms of commercial speech with the general goal of requiring that person-to-person solicitation activities in the Historic District ... be confined to enclosed structures or on the actual business premises of the soliciting entity. [It] is not intended to regulate any form of speech other than speech designed to do no more than propose a commercial transaction. [5]

Off-premises canvassing (OPC) is defined as

> person-to-person efforts solely intended to interest pedestrians in or solicit the participation of pedestrians in commercial transactions for private profit with a business, except when done entirely within an enclosed structure. [6]

The ordinance provides that no person shall engage in OPC within the Historic District except in enclosed structures and areas limited to "200 square feet in size and not so situated as to cause sidewalk obstructions, impede traffic, or interfere with traffic lines of sight." [7] The term "business" within the definition of OPC is defined as "any commercial activity in which any goods, services,

5. *Id.*

6. SMC 5.20.010(B)(4).

7. SMC 5.20.010(C)(3).

tours, or edibles are sold or offered for sale." [8]

## B. Proceedings

This appeal stems from two distinct superior court proceedings. Appellant Lee filed a complaint alleging that the ordinance was unconstitutional under the federal and Alaska constitutions. Appellant Robertson filed a separate complaint alleging that the ordinance violated the federal constitution. The cases were consolidated before Superior Court Judge Larry C. Zervos. Robertson filed a motion for summary judgment, claiming that his right to commercial speech under the federal constitution was violated. Lee joined in Robertson's motion and filed his own motion for summary judgment on overbreadth, which Robertson in turn joined in. Skagway filed a cross-motion on the plaintiffs' commercial speech challenge, and a motion to dismiss the plaintiffs' federal overbreadth claims.

On July 4, 2004, the superior court issued an order deciding all pending summary judgment motions. The superior court determined that the ordinance was a valid regulation of commercial speech under the test articulated by the United States Supreme Court in *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*.[9] It reasoned that the interest of Skagway in protecting citizens from disturbances and obstructions on city streets and sidewalks was well supported by the record and directly connected to the ordinance. Further, it found the ordinance to be a reasonable fit between the ends and the means chosen to accomplish the ends.

The superior court then addressed the argument of Robertson and Lee that the ordinance impermissibly impacts protected, noncommercial speech, and subjected the ordinance to an overbreadth analysis. It found that the ordinance, which defines the term "business" as "any commercial activity in which any goods, services, tours, or edibles are sold or offered for sale" [10] actually "prohibits the sale of *anything* on public streets

and sidewalks in the central business area of Skagway." The superior court concluded:

> No matter what the prefatory language or the explanatory language used by the drafters is, the operative language means that not only is the sale of tours or tacos prohibited but so is the sale of newspapers, bibles, books, art, and any other expressive item that might be sold for a profit.

The superior court explained:

> The ordinance has a legitimate purpose to the extent it regulates commercial transactions. But as long as the plain language of the ordinance prohibits activity that involves protected speech, it is substantially overbroad.

The superior court then noted that, even if the ordinance was overbroad, it could be upheld if a limiting construction could avoid constitutional problems. However, the superior court declined to read the statute in a limited manner, reasoning:

> If the City's concern was limited to the "outcry" sale of tours in the historic area, it should be a relatively straightforward job to restrict this activity in any number of ways. After all, this is clearly commercial activity and does not usually invoke protected speech. But the City seems intent on regulating far more than just the "outcry" tour sales. Given this intent, the only permissible ordinance would be one with significant exceptions to reduce the reach of the ordinance into protected areas. This is not something that can be done by striking a portion of the ordinance or adding a missing word or phrase. Crafting appropriate exceptions will take careful drafting, balancing of interests and selection of appropriate methods. This is legislative work best reserved for the City Assembly, not for the court.

The superior court also found that the ordinance was not a reasonable time, place, and manner restriction, emphasizing that it did not deem the ordinance to be narrowly tailored because "[i]t is a blanket ban on sales

---

8. SMC 5.20.010(B)(1).

9. 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

10. SMC 5.20.010(B)(4) and (B)(1).

in a public forum no matter what is being sold." Skagway filed a motion for reconsideration, which the superior court denied.

Skagway appeals, arguing that the superior court erred in finding the municipal ordinance unconstitutionally overbroad. Skagway argues that the ordinance was limited to only commercial speech as defined by the United States Supreme Court, and claims that the superior court essentially redrafted the ordinance, ignoring the plain meaning of the statute, and then reached the conclusion that the statute was overly broad based on its own erroneous interpretation.

Robertson and Lee urge that this court uphold the superior court's decision but advance several alternative grounds for affirmance should we reject the superior court's finding that the ordinance is overbroad. They argue that the ordinance fails to satisfy *Central Hudson*, that it violates the due process and equal protection clauses of the United States Constitution, and that it is void for vagueness. They contend that the superior court's decision could be affirmed on any of these grounds. Skagway argues that only the overbreadth issue is before this court, and if the superior court's decision is reversed, voluntary dismissals by Robertson and Lee of all their claims preclude them from seeking relief on other grounds.

Robertson cross-appeals, challenging the superior court's July 2004 order that Robertson "is not entitled to compensatory damages under 42 U.S.C. § 1983" for successfully bringing an overbreadth challenge. Finally, Lee and Robertson claim that they are entitled to attorney's fees if they prevail in this appeal.

## III. DISCUSSION

### A. Standard of Review

■ The constitutionality of a statute and matters of constitutional or statutory interpretation are questions of law to which we apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[11]

■ When interpreting a statute, courts look to the plain meaning of the statute, the legislative purpose, and the intent of the statute.[12] "Statutes should be construed, wherever possible, so as to conform to the constitutions of the United States and Alaska."[13]

■ A grant of summary judgment is reviewed de novo, and we will affirm if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[14]

### B. The Ordinance Is Not Unconstitutionally Overbroad.

The United States Supreme Court has defined commercial speech as "speech which does no more than propose a commercial transaction."[15] We have similarly characterized commercial speech as "communication proposing a commercial transaction."[16] The First Amendment, applicable in Alaska through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation.[17] But the United States Constitution "accords less protection to commercial speech than to other constitutionally safeguarded forms of expression."[18] Generally, the doctrine of overbreadth is in-

**11.** *State Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 858 (Alaska 2003).

**12.** *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1050 (Alaska 2004).

**13.** *Alaska Transp. Comm'n v. AIRPAC, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984) (citing *McCracken v. State*, 518 P.2d 85, 88 (Alaska 1974)).

**14.** *Briggs v. Newton*, 984 P.2d 1113, 1117 (Alaska 1999).

**15.** *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96

S.Ct. 1817, 48 L.Ed.2d 346 (1976) (quotation marks omitted).

**16.** *Alaska Transp. Comm'n*, 685 P.2d at 1253 (citing *Central Hudson*, 447 U.S. at 561–62, 100 S.Ct. 2343).

**17.** *Virginia Bd. of Pharmacy*, 425 U.S. at 761–63, 96 S.Ct. 1817.

**18.** *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64–65, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

applicable to commercial speech unless the challenged regulation also impacts non-commercial speech. The theory is that "commercial expression is not easily deterred by overbroad regulation, and is considered more hardy, less likely to be chilled, and not in need of surrogate litigators." [19]

In *Alaska Transportation Commission v. AIRPAC, Inc.*, we adopted the *Central Hudson* test for assessing the validity of restrictions on commercial speech. [20] The superior court found that the ordinance satisfied *Central Hudson* as it concerned commercial speech, but because the ordinance impacted non-commercial speech in addition to commercial speech, it was overbroad. Whether the superior court properly held that the ordinance was overbroad therefore turns on whether the ordinance should be construed as applying to non-commercial as well as commercial speech.

■ Section A, the findings and purposes section of the ordinance, expressly provides that it is "directed solely to the regulation of ... certain limited forms of commercial speech," and "not intended to regulate any form of speech other than speech designed to do no more than propose a commercial transaction." [21] Despite this language, the superior court construed the ordinance to prohibit the sale of *"anything* on public streets and sidewalks in the central business area of Skagway." In reaching its conclusion, the superior court relied upon the definition of business in section B of the ordinance, which is defined as "any commercial activity in which any goods, services, tours or edibles are sold or offered for sale." [22] The superior court stated that "[n]o matter what the prefatory language or the explanatory language used by the drafters is, the operative language means that not only is the sale of tours or tacos prohibited but so is the sale of newspapers, bibles, books, art, and any other expressive item that might be sold for a profit." Because the superior court construed the ordinance as regulating non-commercial speech as well as commercial speech, it deemed the ordinance overbroad. We disagree with the superior court that the ordinance should be read to extend to non-commercial speech.

The definition of business is incorporated into the definition of "Off Premises Canvassing." OPC is defined as "person-to-person efforts solely intended to interest pedestrians in or solicit the participation of pedestrians in commercial transactions for private profit with a business, except when done within an enclosed structure." [23] Skagway notes that it is OPC, and not business more broadly, that is regulated by the ordinance. In section C—entitled "Limitations on Off–Premises Canvassing Activity"—the proscribed behavior is outlined, and does not include the term "business," except in the sense that it is incorporated into the definition of OPC in section B. [24] Therefore, the superior court's determination that the ordinance "prohibits the sale of *anything* on public streets and sidewalks in the central business area of Skagway" based on the definition of business is not supported directly by the language of the ordinance.

Lee further argues that the language in the definition of OPC impermissibly focuses on the intent of the speaker when it defines OPC as "solely intended" to interest pedestrians in commercial transactions. He states that this includes speech that is fully constitutionally protected, including expressive items such as newspapers, message bearing

**19.** 16B C.J.S. Constitutional Law § 812 (2005); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (noting that "the overbreadth doctrine does not apply to commercial speech").

**20.** The *Central Hudson* test, as adopted by this court, asks: (1) whether the regulated commercial expression qualifies as commercial speech in that it "concern[s] lawful activity and is not misleading"; (2) "whether the governmental interest is substantial"; (3) if so, "whether the regulation directly advances the government interest asserted"; and (4) "whether it is not more extensive than necessary to serve that interest." *Alaska Transp. Comm'n*, 685 P.2d at 1253.

**21.** SMC 5.20.010(A)(1).

**22.** SMC 5.20.010(B)(1).

**23.** SMC 5.20.010(B)(4).

**24.** SMC 5.20.010(C).

T-shirts, or tarot card readings, so long as the speaker intends to make a profit. But Lee's interpretation of the term "solely intended" would conflict with the language in the findings and purposes section of the statute which states that "this section is ... directed solely to the regulation of the time, place, and manner of certain limited forms of commercial speech." [25] Considering the ordinance as a whole and its legislative purpose and intent, we interpret the ordinance as applying "solely" [26] to commercial speech. [27]

To the extent that phrases such as "solely intended" have created any ambiguity about whether the ordinance applies to expressive items which enjoy full protection, we limit its application. [28] We recognize as valid the superior court's concerns with the scope of the statute, and note that the ordinance should not be construed to apply to the "sale of newspapers, bibles, books, art, and any other expressive item that might be sold for a profit." As other courts have recognized, items such as "music, buttons, and bumper stickers bearing political, religious, and ideo-

logical messages ... are expressive items, and they do not lose their constitutional protection simply because they are sold rather than given away." [29] And as the United States Supreme Court has explained, speech that is commercial in the abstract does not retain its commercial character "when it is inextricably intertwined with otherwise fully protected speech." [30] Expressive items are therefore outside the scope of this ordinance, which is limited solely to "commercial speech." Because we construe the ordinance to apply only to commercial speech that does no more than propose a commercial transaction, [31] we do not deem the ordinance overbroad, and we reverse the order. [32]

### C. We Need Not Decide Which, if Any, of Lee's and Robertson's Claims Remain Viable.

◼ Lee and Robertson argue that, even if we reverse the superior court's decision that the ordinance is overbroad, we should affirm the superior court's holding because the ordinance fails the *Central Hudson* test, it vio-

25. SMC 5.20.10(A)(1).

26. The Skagway ordinance uses the term "solely," which was offered as an example of proper limiting language by the Ninth Circuit in *S.O.C., Inc. v. County of Clark* when it invalidated an OPC ordinance because "the explicit terms of the Clark County Ordinance do not limit its restrictions to purely commercial speech." 152 F.3d 1136, 1144 (9th Cir.1998).

27. *See W. Star Trucks*, 101 P.3d at 1050.

28. As this court explained in *VECO International, Inc. v. Alaska Public Offices Commission:*

> Analytically, there are two ways a statute could be overbroad, which might loosely be termed "systemic" and "local." An overbroad statute is *systematically* overbroad if there is no core of easily identifiable and constitutionally proscribable conduct that the statute prohibits. The separation of powers decreed by the state constitution requires that this court strike such a statute in its entirety, rather than re-draft it.
>
> On the other hand, a *locally* overbroad statute is one where the unconstitutional applications can easily be lumped together and severed. To strike such a statute would be "manifestly[] strong medicine," particularly when the litigant's own activities are not protected, and the legislation clearly intended to proscribe them. In such cases, most courts will excise or construe the challenged portion,

whenever possible, to avoid an unconstitutional result.

753 P.2d 703, 713 (Alaska 1988) (citations omitted). Robertson and Lee argue that Skagway did not properly preserve the right to request a limiting construction, but since it is a well-established canon of construction that regulations should be construed wherever possible to conform to the constitutions of the United States and Alaska, this argument is without merit. *See Alaska Transp. Comm'n*, 685 P.2d at 1253.

29. *Perry v. Los Angeles Police Dep't*, 121 F.3d 1365, 1368 (9th Cir.1997).

30. *Riley v. Nat'l Fed. of the Blind of N.C.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).

31. *See Virginia Bd. of Pharmacy*, 425 U.S. at 762, 96 S.Ct. 1817 (defining commercial speech as "speech which does no more than propose a commercial transaction") (quotation marks omitted); *Alaska Transp. Comm'n*, 685 P.2d at 1253 (describing commercial speech as "communication proposing a commercial transaction").

32. Because we reverse the superior court's determination that the ordinance extends to non-commercial as well as commercial speech, we need not address the question whether the ordinance is a reasonable restriction on the time, place, or manner of protected speech.

lates equal protection and substantive due process, and it is void for vagueness. But Skagway argues that Robertson and Lee both waived their rights to seek relief on alternative grounds when they voluntarily dismissed their claims.

After the superior court decided in Robertson's favor with respect to his overbreadth claim, Robertson decided to proceed to trial on his remaining federal claims. On October 13, 2004, before trial, the parties reached a settlement agreement. Robertson agreed with Skagway that "the first, third and fourth causes of Robertson's complaint ... are dismissed with prejudice." This included claims that the ordinance was unconstitutional as applied to Robertson because it improperly prohibits commercial speech, and that the ordinance was a violation of federal equal protection and substantive due process. The only claim that was preserved was the second cause of action, that the statute was overbroad.

While Robertson casts his claim that the ordinance does not meet the test for regulations of commercial speech under *Central Hudson* as an alternative ground upon which this court can affirm the superior court's holding, Robertson made the claim below that the ordinance was a violation of commercial speech as a separate claim. Robertson and Lee each moved for summary judgment based on this separate commercial speech claim, and their motions were denied by the superior court because material factual issues were raised. Before those factual issues could be resolved at trial, Robertson settled with Skagway, agreeing to dismiss his commercial speech claim. Robertson does not appeal the denial of his motion for summary judgment through this appeal. Furthermore, Robertson clearly limited his right to appeal to the overbreadth claim when he entered into the settlement agreement. To allow Robertson to reopen the issue of whether the superior court correctly determined that the ordinance met the *Central Hudson* test after having settled his commercial speech claim would essentially give Robertson another bite at the apple, which we decline to do.

The superior court did not reach Robertson's claims that the ordinance violated equal protection and due process and that it was void for vagueness. Robertson therefore urges us to make an independent determination that the ordinance violates equal protection and due process and is void for vagueness in the first instance. But it appears from the settlement agreement that Robertson could be precluded from making the same arguments on remand. We therefore decline to address these claims which are not properly before us in this case. And since we reverse on the overbreadth issue, we need not address Robertson's argument that under 42 U.S.C. § 1983 he is entitled to compensatory damages for successfully bringing an overbreadth challenge.

Lee raised several state and federal law claims in addition to the overbreadth challenge to the ordinance. On July 23, 2004, after the superior court declared the ordinance unconstitutional, a pretrial conference was held to discuss any remaining claims that might proceed to trial. At this conference, Lee's attorney engaged in an exchange with the superior court about whether he could forgo trial on Lee's remaining claims pending the outcome of any appeal on the overbreadth issue, yet preserve the right to restore the claims should this court reverse and remand the case back to the superior court. Ultimately, while stressing that he was intending to dismiss the claims "without prejudice," Lee's attorney agreed to dismissal of Lee's remaining claims as moot, reasoning that trying the claims would not result in any relief not already granted to Lee under the court's decision that the ordinance was overbroad, and that it was unnecessary for Lee to engage in what would essentially be an "advisory trial." Since the apparent purpose of the dismissal was to obtain a final judgment on the overbreadth claim, and we hold that the statute is not overly broad, we conclude that there are no remaining claims in this case. Of course, the parties are entitled to have the superior court decide whether their dismissed claims remain viable if they choose to refile them. But regardless of whether those claims can be resuscitated if refiled, they are not presently ripe for resolution.

Because attorney's fees would only be applicable if Robertson and Lee prevailed in this appeal, we need not address any claimed entitlement to attorney's fees.

## IV. CONCLUSION

We REVERSE the determination that the ordinance was overly broad.