STATE of Alaska, David W. Márquez, Attorney General for the State of Alaska, in his official capacity, Appellants,

v.

AMERICAN CIVIL LIBERTIES UNION OF ALASKA, Jane Doe, and Jane Roe, Appellees.

No. S–12370.

Supreme Court of Alaska.

April 3, 2009.

---

32. Majority Op. at 352–53.

33. AS 23.40.070.

34. Majority Op. at 357.

35. *Id.*

36. *Id.*

37. *Procter & Gamble Indep. Union of Port Ivory, N.Y. v. Procter & Gamble Mfg. Co.,* 298 F.2d 644, 646 (2d Cir.1962).

Dean J. Guaneli, Special Assistant Attorney General, Talis J. Colberg, Attorney General, Juneau, for Appellants.

Jason Brandeis, ACLU of Alaska Foundation, Anchorage, Adam B. Wolf, M. Allen Hopper, ACLU Foundation, Santa Cruz, California, for Appellees.

Allen F. Clendaniel, Dorsey & Whitney LLP, Anchorage, for Amici Curiae Dr. Melanie Dreher, Dr. David Ostrow, and Dr. Craig Reinarman.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, CARPENETI,
and WINFREE, Justices.

*OPINION*

MATTHEWS, Justice.

Under the ripeness doctrine, the constitutionality of a statute generally may not be challenged as an abstract proposition. The plaintiffs in the present case have brought a pre-enforcement challenge to a newly amended statute that prohibits the possession and use of marijuana. They claim that because the statute criminalizes the use by adults of small amounts of marijuana in their homes it violates their privacy rights as interpreted in *Ravin v. State*.[1] The question addressed in this opinion is whether the general bar on abstract adjudication should apply. The plaintiffs argue for an exception, contending that it is unfair to put them to a choice of either continuing to use marijuana in their homes and risking prosecution or giving up its use. We conclude that the need to make this choice is not a product of the challenged statute because the plaintiffs will remain subject to prosecution under federal law regardless of how we might rule. For this reason, and because other factors that counsel against deciding cases in an abstract setting are also present, we conclude that any challenge to the statute must await an actual prosecution.

## I. FACTS AND PROCEEDINGS

In June 2006 the Alaska Legislature amended AS 11.71.060(a) to prohibit the possession of less than one ounce of marijuana.[2] The American Civil Liberties Union of Alaska and two anonymous individuals, Jane Doe and Jane Roe (collectively, "ACLU" or "plaintiffs"), sued for declaratory and injunctive relief. They argued that section .060 as amended conflicts with the privacy clause of the Alaska Constitution,[3] as interpreted in *Ravin v. State*,[4] to the extent that it criminalizes possession of small amounts of marijuana in the home by adults for personal use.

The ACLU moved for a temporary restraining order and preliminary injunction pending resolution of the suit. At a hearing before Superior Court Judge Patricia A. Collins the ACLU agreed that its motion for a temporary restraining order and preliminary injunction could be treated as a motion for summary judgment. Later the State moved to dismiss Jane Doe and the ACLU on standing grounds. The State argued that Doe lacked standing because she could seek protection under Alaska's medical marijuana law.[5] It further contended that the ACLU

---

**1.** 537 P.2d 494 (Alaska 1975).

**2.** Ch. 53, § 9, SLA 2006 (criminalizing the possession of marijuana in amounts smaller than one ounce); *see also* AS 11.71.190(b) (defining marijuana as a schedule VIA controlled substance). The legislature also amended AS 11.71.050(a)(2)(E), making it a class A misdemeanor to possess one ounce or more of marijuana. Ch. 53, § 8, SLA 2006. The validity of section .050 as amended is not at issue in this case.

**3.** Alaska Const. art I, § 22 ("The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.").

**4.** 537 P.2d at 504, 511 (holding that Alaskans have a fundamental right to privacy in their homes and protecting the possession by adults of small amounts of marijuana in the home for personal use).

**5.** AS 17.37.010–.080. The plaintiffs subsequently dropped any challenge based on medical use of marijuana.

lacked organizational or associational standing. The State also opposed the ACLU's motion for preliminary relief or summary judgment and cross-moved for summary judgment. The superior court concluded that the plaintiffs had standing to challenge the law because "they are exposed to potential criminal prosecution for possession of small amounts of marijuana in their homes."[6] In the same order, the court, relying on our decision in *Ravin*, granted summary declaratory judgment in favor of the ACLU.

The State appeals. It argues that *Ravin* should no longer be considered controlling for several reasons. The State contends that marijuana is much more intoxicating now than it was in 1975 when *Ravin* was decided.[7] Further, according to the State, more people are using marijuana and starting to do so at younger ages than at the time *Ravin* was decided, and the adverse consequences of using marijuana are better understood. The State points out that the legislature held hearings on marijuana usage before enacting the 2006 amendments and made a number of findings. The State summarizes the findings, in part, as follows:

(1) Marijuana potency has increased dramatically in the last 30 years, particularly in Alaska, and corresponds to an increase in rehabilitative and hospital treatment related to marijuana use.

(2) Hundreds of Alaskans are treated for marijuana abuse each year, more than half being children; pregnant women in Alaska use marijuana at a higher rate than the national average.

(3) Many users become psychologically dependent on marijuana under recognized clinical standards.

(4) Early exposure to marijuana increases the likelihood of health and social problems, including mental health problems.

(5) Many people treated for alcoholism also abuse marijuana, and alcoholism treatment is more difficult when marijuana is used.

(6) Marijuana affects many body and brain functions; it often contains bacteria and fungi harmful to humans.

(7) A higher percentage of adults and juveniles arrested in Alaska have marijuana in their systems at the time of arrest.

(8) If a parent uses marijuana, then their children are much more likely to become marijuana users; studies have shown that criminal penalties increase the perception among teenagers of the risks of using marijuana, thus reducing use.

The ACLU argues that marijuana has not changed significantly since *Ravin* was decided, that it is a relatively harmless substance, and that no grounds exist for reconsidering *Ravin*. The ACLU further argues that if the court were inclined to reconsider *Ravin*, a remand for a hearing would be appropriate to assess the nature of marijuana and the consequences of its use.

After this case was submitted for decision on appeal, we requested supplemental briefing on the question of ripeness. In their supplemental briefing, both parties argued that this appeal is fit for resolution because the plaintiffs otherwise must risk criminal prosecution in order to challenge the amended statute. We disagree and conclude that this case is not ripe because it does not arise from an actual prosecution brought under the amended statute. The relaxed approach to ripeness sometimes taken with respect to pre-enforcement challenges to criminal laws is not appropriate here because the plaintiffs already face a risk of prosecution for home use of marijuana under federal drug statutes.

## II. STANDARD OF REVIEW

The State and ACLU contend that we should review the superior court's ripeness conclusion for an abuse of discretion. We disagree and employ de novo review. The State and ACLU conflate the two requirements for declaratory judgment—standing and the prudential basis for granting declara-

---

**6.** The court concluded that the ACLU had standing to sue on behalf of its members who use marijuana for personal purposes in the home.

**7.** The legislative findings that accompany the 2006 amendment indicate that the average potency of marijuana used in Alaska in 2003 was nearly fourteen times stronger than that used in the 1960s and 1970s.

tory relief—and the different standards of review that attach to each requirement.

■■■ Alaska's declaratory judgment statute provides in relevant part: "In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought."[8] Though a superior court "may" issue declaratory relief, the superior court may only exercise this discretion in a "case of . . . actual controversy."[9] The statute's reference to an "actual controversy" encompasses considerations of standing, mootness, and ripeness.[10] As we have recently recognized, this court is the ultimate arbiter of such issues and we review de novo a superior court's ripeness determination.[11] To the extent that our prior decisions have suggested that abuse of discretion review applies to both a superior court's finding of an actual controversy and a ruling that declaratory relief is in other respects appropriate,[12] we now clarify those cases in light of our more recent decisions.

**8.** AS 22.10.020(g); *see also* Alaska R. Civ. P. 57(a).

**9.** *See Jefferson v. Asplund*, 458 P.2d 995, 998–99 (Alaska 1969).

**10.** *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358 (Alaska 2001).

**11.** *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (reviewing the superior court's dismissal for mootness de novo because "[m]ootness[,] . . . [s]tanding and ripeness are . . . questions of law, calling for independent judgment review."); *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 287 (Alaska 2008) ("We apply our independent judgment in determining mootness because mootness is a question of law.").

Federal precedent, relevant because Alaska's declaratory judgment act was modeled after the federal act, 28 U.S.C. § 2201 (2006), *see Alaska Airlines, Inc. v. Red Dodge Aviation, Inc.*, 475 P.2d 229, 232 (Alaska 1970), also supports de novo review. *See, e.g., Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 848–49 (9th Cir.2007) (reversing a district court's grant of declaratory relief because the appeal was not an actual case or controversy as it was not ripe).

**12.** *E.g., Lowell v. Hayes*, 117 P.3d 745, 750 (Alaska 2005); *Thomas v. Anchorage Equal Rights*

## III. DISCUSSION

### A. The Requirements of the Ripeness Doctrine.

■■■ The "actual controversy" limitation in Alaska's declaratory judgment act[13] reflects a general constraint on the power of courts to resolve cases. Courts should decide cases only when a plaintiff has standing to sue and the case is ripe and not moot.[14] Because ripeness constrains the power of courts to act, courts should not rely on an agreement by the parties that a case is ripe for decision.[15] In its recent decision in *Alaska Right to Life Political Action Committee v. Feldman,*[16] the Ninth Circuit Court of Appeals explained the basic requirement of ripeness: "While 'pure legal questions that require little factual development are more likely to be ripe,' a party bringing a preenforcement challenge must nonetheless present a 'concrete factual situation.' "[17] We have similarly recognized that a case is justiciable only if it has matured to a point that warrants decision.[18] "[W]hile Alaska's stand-

*Comm'n,* 102 P.3d 937, 942–43 & n. 31 (Alaska 2004); *Brause,* 21 P.3d at 358.

**13.** AS 22.10.020(g).

**14.** *See Brause,* 21 P.3d at 358.

**15.** *See, e.g., Istrice v. City of Sparks,* 8 Fed. Appx. 841, 843 (9th Cir.2001) ("[B]ecause issues of ripeness involve, at least in part, the existence of a live 'Case or Controversy,' we cannot rely upon concessions of the parties and must determine whether the issues are ripe for decision." (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 138, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974))); *Sisseton–Wahpeton Sioux Tribe v. United States,* 804 F.Supp. 1199, 1204–05 (D.S.D. 1992) ("[I]n deciding whether the . . . claim is ripe, this Court is not bound by allegations in the . . . complaint or by stipulations entered into by the parties."); 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2757, at 507 (1998).

**16.** 504 F.3d 840 (9th Cir.2007).

**17.** *Id.* at 849 (quoting *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1132 (9th Cir.1996)).

**18.** In *Brause* we surveyed our ripeness precedent and explained:

ing rules are liberal this court should not issue advisory opinions or resolve abstract questions of law." [19]

■ The concept of ripeness can be explained in both abstract and practical formulations. The abstract formulation is that ripeness depends on "whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." [20] On a more practical level, our ripeness analysis fundamentally "balances the need for decision against the risks of decision." [21] We examine "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." [22]

■ Under this formulation, varying degrees of concreteness might be deemed acceptable depending on the need for a judicial decision. Thus, in the context of free speech, a "court may adopt [a] somewhat relaxed approach to justiciability" because of the special consideration traditionally afforded speech rights.[23] Where a statute criminalizes conduct, threats of enforcement will support a pre-enforcement challenge if the threats are real and actually force the plaintiff to choose between forgoing the behavior and facing penalties.[24]

## B. The Parties Face Little Hardship If Their Claims Are Not Resolved in a Hypothetical Setting.

■ Both the State and ACLU argue that the ACLU's pre-enforcement challenge is ripe because the threat of enforcing AS 11.71.060(a) forces plaintiffs to either change their behavior or face the risk of criminal liability. Neither party sets forth other hardships that might occur if we refrain from reaching the merits of this appeal.

We conclude that the risk of criminal liability argument rings hollow because the activities that the plaintiffs wish to engage in are already criminal under federal law. Thus, the plaintiffs do not have a strong claim of need for a pre-enforcement decision on the constitutionality of the amended statute because their current practices are and will remain illegal and expose them to a risk of criminal prosecution, regardless of any ruling this court might make.

### 1. The Federal Controlled Substances Act criminalizes the plaintiffs' personal, residential consumption of marijuana and imposes penalties that exceed state sanctions.

As part of President Nixon's "War on Drugs," Congress passed the Comprehensive Drug Abuse Prevention and Control Act of 1970, also known as the Controlled Sub-

The degree of immediacy of a prospective injury needed to satisfy the ripeness doctrine has not been systematically explored in our case law. Instead, our cases contain statements such as " '[a]dvisory opinions' are to be avoided," or "[t]he ripeness doctrine forbids judicial review of 'abstract disagreements,' " or "courts should decide only 'a real, substantial controversy,' not a mere hypothetical question."
21  P.3d at 359 (internal footnotes omitted).

**19.**  *Bowers Office Products, Inc. v. Univ. of Alaska,* 755 P.2d 1095, 1097–98 (Alaska 1988); *see also Zoerb v. Chugach Elec. Ass'n,* 798 P.2d 1258, 1261 (Alaska 1990) ("[S]tanding is not an illusory requirement in Alaska.").

**20.**  *Brause,* 21 P.3d at 359 (quoting 13A WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532, at 112 (2d ed.1984)).

**21.**  *Id.* (quoting WRIGHT, *supra* note 20, § 3532.1, at 114–15).

**22.**  *Id.* (quoting WRIGHT, *supra* note 20, § 3532 at 112) (internal quotation marks omitted).

**23.**  *Alaska Right to Life Political Action Comm. v. Feldman,* 504 F.3d 840, 851 (9th Cir.2007).

**24.**  *Lowell v. Hayes,* 117 P.3d 745, 757–58 (Alaska 2005) (concluding that a disputed threat of prosecution was insufficient for ripeness); *Thomas v. Anchorage Equal Rights Comm'n,* 102 P.3d 937, 942–43 (Alaska 2004) (holding that risk of enforcement of a law was sufficient for ripeness where the law allegedly interfered with appellant landlords' First Amendment free exercise of religion rights by requiring them to rent housing to unmarried couples); *State v. Planned Parenthood of Alaska,* 35 P.3d 30, 34 (Alaska 2001) (allowing doctors to maintain pre-enforcement challenge to law requiring parental consent to abortions for girls under age seventeen, as law would require doctor-appellants to "change their current practices and expose them to civil and criminal liability if they failed to comply").

stances Act.[25] Under this act, marijuana is classified as a Schedule I drug[26]—a drug with a high potential for abuse, lack of any accepted medical use, and lack of accepted safety for use under medical supervision.[27] The possession of marijuana in any quantity is a federal crime.[28] By comparison, current Alaska law classifies marijuana as a Schedule VIA drug—a drug with the lowest degree of danger or probable danger to a person or the public.[29]

Unsurprisingly, the Controlled Substances Act treats possession and use of marijuana as a much more serious offense than Alaska law. The federal sanction for a first-time offender possessing any quantity of marijuana is a term of imprisonment of not more than one year and a fine of at least $1,000, or both.[30] A person who knowingly possesses marijuana for personal use also faces a federal civil penalty of not more than $10,000.[31] By comparison, under the amended Alaska statute the penalty for a first offense of possession in the home is, at most, a $500 fine with no jail time.[32]

Regardless of the outcome of this case, there is nothing that this court, or any other branch of the Alaska government, could do to affect the risk or severity of federal enforcement.[33] The United States Supreme Court's recent decision in *Gonzales v. Raich* shows the continuing supremacy of the federal drug laws.[34] In *Raich*, the Court upheld the Federal Controlled Substances Act even though

it criminalized conduct that California's medical marijuana law legalized.[35] As the facts of *Raich* demonstrate, the Federal Drug Enforcement Agency enforces the Controlled Substances Act without deference to state law or policies. Accordingly, both before and after our decision in *Ravin*, the risk of federal prosecution has threatened Alaskans' use of marijuana. And the risk of federal prosecution for marijuana possession—amplified by harsh federal penalties—remains a strong reality that the plaintiffs will face irrespective of any ruling we might make in this appeal.

### 2. The declarations of Jane Doe and Jane Roe neither suggest that the amended statute will affect their conduct nor that they will be the subjects of enforcement.

The ACLU's complaint for declaratory and injunctive relief suggests that fear of enforcement is the basis for ripeness. To support this position, Jane Doe and Jane Roe submitted declarations regarding their use of marijuana. Jane Doe declares that she uses marijuana for medicinal purposes, though she did not register as a medical marijuana user. Jane Roe declares that she uses marijuana to relieve stress.

Reading the declarations, we conclude that any incremental deterrence associated with AS 11.71.060, as opposed to the current federal drug laws, will not impact the plaintiffs.

**25.** Pub.L. No. 91–513, 84 Stat. 1236; *see also Gonzales v. Raich*, 545 U.S. 1, 10, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).

**26.** 21 U.S.C. § 812(c) (1999); *see also Raich*, 545 U.S. at 14–15, 125 S.Ct. 2195.

**27.** 21 U.S.C. § 812(b)(1).

**28.** *Id.* § 844(a). There are limited exceptions for activities such as government-approved marijuana research. *See, e.g., id.* §§ 822–23, 844(a).

**29.** AS 11.71.190.

**30.** 21 U.S.C. § 844(a). Because the statute challenged in this case criminalizes the possession of less than one ounce of marijuana, we limit our examination of criminal penalties to this offense.

**31.** 21 U.S.C. § 844(a).

**32.** AS 12.55.135(j). A person possessing less than one ounce of marijuana in the home for personal use only faces potential incarceration if compounding conditions are met, such as a previous conviction or being on probation or parole. Neither Jane Doe nor Jane Roe have suggested that greater penalties might apply to their situation.

**33.** The Supremacy Clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2.

**34.** 545 U.S. 1, 7–9, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).

**35.** *Id.* at 29–34, 125 S.Ct. 2195.

Jane Doe does not aver that AS 11.71.060 will affect her use of marijuana. Rather she states that "[e]ven if the legislature makes marijuana illegal, I will continue to use and possess it in my home." Jane Doe thus does not seem deterred by the amended state statute. Jane Roe asserts her belief in a right to have small amounts of marijuana in her home, but explains "I don't want to go to jail." But Jane Roe's concern about incarceration is more real under federal law than under the amended state statute, since the latter only imposes a small monetary fine on first-time offenders. Thus the hardships asserted by both named plaintiffs do not require that we address the constitutionality of AS 11.71.060 at this time.

While the ACLU claims associational standing, it too did not allege any facts distinguishing the hardship its members faced before AS 11.71.060 was amended from the hardship its members faced after the statute was amended. The mere criminalization of marijuana simply echoes extant federal law.

We also note that the plaintiffs' fears of state criminal enforcement may be speculative and overstated. In *Ravin* we recognized that prosecutors and police departments generally are not interested in pursuing individuals who merely possess small quantities of marijuana in their home for personal use.[36] Thus, to face prosecution, persons violating the amended statute would need to be in a situation where police have reason to suddenly enter their homes. Such a scenario bears similarities to *City of Los Angeles v. Lyons*, in which the United States Supreme Court rejected as speculative and not ripe a claim that Lyons would be subject to a police choke hold in the future.[37] The Court noted that Lyons only faced this risk if he acted in a manner leading to an encounter with police

and that, during the encounter, he resisted detention or failed to comply with police orders.[38] The Court thus concluded, as we do in this case, that there would be little hardship to the plaintiff if the appeal were not decided in a hypothetical setting.

## C. Decisional Risks Are Present

As we have noted, in determining whether the ripeness element of the actual controversy requirement exists, we balance the asserted need for a decision against the risks of making a decision in an abstract context. In the above discussion we conclude that the "need" side of the scale has little or no weight. It follows that this case should be considered not ripe for decision if the normal risks associated with deciding hypothetical cases are present. We conclude that they are.

In *Brause v. State, Department of Health & Social Services*,[39] we outlined some of the considerations on the "risks" side of the scale:

The central perception is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance. As to the parties themselves, courts should not undertake the role of helpful counselors, since refusal to decide may itself be a healthy spur to inventive private or public planning that alters the course of possible conduct so as to achieve the desired ends in less troubling or more desirable fashion. Defendants, moreover, should not be forced to bear the burdens of litigation without substantial justification, and in any event may find themselves unable to litigate intelligently if they are forced to

**36.** *Ravin v. State,* 537 P.2d 494, 511 n. 70 (Alaska 1975) ("Statistics indicate that few arrests for simple possession occur in the home except when other crimes are simultaneously being investigated. The trend in general in law enforcement seems to be toward minimal effort against simple users of marijuana, and concentration of efforts against dealers and users of more dangerous substances. Moreover, statistics indicate that most arrests for possession of marijuana in Alaska result in dismissals before trial.").

**37.** 461 U.S. 95, 97–98, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

**38.** *Id.* at 105–06, 103 S.Ct. 1660; *see also Alaska Right to Life Political Action Comm. v. Feldman,* 504 F.3d 840, 851–52 (9th Cir.2007) (noting that there was a "lack of any credible threat of enforcement" of the challenged provision of the Alaska Judicial Code).

**39.** 21 P.3d 357 (Alaska 2001).

grapple with hypothetical possibilities rather than immediate facts. Perhaps more important, decisions involve lawmaking. Courts worry that unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication. These concerns translate into an approach that balances the need for decision against the risks of decision. The need to decide is a function of the probability and importance of the anticipated injury. The risks of decision are measured by the difficulty and sensitivity of the issues presented, and by the need for further factual development to aid decision.[40]

Several of these concerns are present in this case.

### 1. Concrete facts may aid in the decision.

When statutes are found by a court to be unconstitutional, they may be found to be unconstitutional as applied or unconstitutional on their face. A holding of facial unconstitutionality generally means that there is no set of circumstances under which the statute can be applied consistent with the requirements of the constitution.[41] A holding that a statute is unconstitutional as applied simply means that under the facts of the case application of the statute is unconstitutional. Under other facts, however, the same statute may be applied without violating the constitution.

We discussed these distinctions in *State, Department of Revenue, Child Support Enforcement Division v. Beans*.[42] At issue was the constitutionality of a statute permitting the Child Support Enforcement Division to suspend the driver's licenses of people who are delinquent in child support payments. After noting the definition of facial unconstitutionality, we observed that if the statute

> were applied so as to take away the license of an obligor who was unable to pay child support, it would be unconstitutional as applied in that case. At that point there would be no rational connection between the deprivation of the license and the State's goal of collecting child support.[43]

But we explained that substantive due process norms—requiring a statute to have a reasonable relationship to a legitimate governmental purpose—would be satisfied if the statute were applied to people who are capable of paying child support.[44]

Here the ACLU does not argue that AS 11.71.060 is unconstitutional in all circumstances. The amended statute applies to use or possession of marijuana anywhere, but the ACLU argues that only home possession or use is constitutionally protected. The statute applies to "a person," but the ACLU argues that only adult users and possessors are protected. The statute applies to possession for any purpose, but the ACLU argues that only possession for personal use is protected. We are thus not being asked to declare the amended statute facially unconstitutional, for it has many clearly constitutional applications, but to define by pre-determined categories[45] the circumstances under which the statute may not operate.

But adjudication of an actual case, or several actual cases, might cast these categories in a different light. There may be cases where the conduct of a particular defendant is so closely connected to one or more of the health and safety goals underlying the amended statute that the statute could permissibly be applied, even if *Ravin* retains general vitality.

**40.** *Id.* at 359 (quoting WRIGHT, *supra* note 20 § 3532.1, at 114–15).

**41.** *State, Dep't of Revenue, Child Support Enforcement Div. v. Beans*, 965 P.2d 725, 728 (Alaska 1998).

**42.** 965 P.2d 725.

**43.** *Id.* at 728.

**44.** *Id.* at 727–28.

**45.** The ACLU, of course, did not originate these categories. They were established in *Ravin*. *See Ravin v. State*, 537 P.2d 494, 511 (Alaska 1975) (holding that "possession of marijuana by adults at home for personal use is constitutionally protected").

██ ██ Relatedly, when constitutional issues are raised, this court has a duty to construe a statute, where reasonable, to avoid dangers of unconstitutionality.[46] Rather than strike a statute down, we will employ a narrowing construction, if one is reasonably possible.[47] The amended statute may be a candidate for narrowing constructions. A construction upholding the statute in cases directly involving the health and safety goals on which the statute is based might be developed. This case is necessarily about a narrowing construction of some sort since the amended statute is not unconstitutional in all its applications. The question is what narrowing constructions are appropriate. Allowing the normal processes of adjudication to take place may be of assistance in providing the answer.

We have recent experience underlining the potential problems with deciding the constitutionality of a statute in the absence of actual facts. In *Evans ex rel. Kutch v. State* we considered a broad facial challenge to many aspects of Alaska's tort reform legislation.[48] In part of our opinion in that case we upheld a statute of limitations tolling provision for minors against an equal protection challenge.[49] A few years later in *Sands ex rel. Sands v. Green* the same provision was challenged in a concrete case.[50] In *Sands* we struck down the statute on due process grounds.[51] In so ruling we observed:

> That our *Evans* decision did not reach this particular constitutional issue merely reinforces the wisdom of the rule that courts should generally avoid deciding abstract cases. *Evans* involved a host of abstract facial challenges divorced from any factual context, and we warned at the time we decided *Evans* that future cases might require us to take a second look at the constitutionality of the statutory scheme.... But, given the abstract nature of *Evans*, it is not surprising that a concrete case involving a concrete factual scenario has uncovered a previously unanswered question.[52]

In deciding here that our decision concerning the constitutionality of the amended statute could be aided by one or more concrete factual scenarios, we take counsel from *Sands*.

## 2. Other factors also counsel against an unnecessary ruling.

Beyond the assistance that the facts of concrete cases might lend to the ultimate resolution of the issue before us, some of the other risk factors mentioned in *Brause* are also present.[53] The question before the court is, taken alone, a difficult one with reasonable arguments available to both sides. It is also a high-profile case in which the general public as well as the executive and legislative branches of government are interested. Further, sustaining the ACLU's position would necessarily require that we declare the amended statute unconstitutional in part. Due respect for the legislative branch of government requires that we exercise our duty to declare a statute unconstitutional only when squarely faced with the need to do so.

## IV. CONCLUSION

We conclude that the actual controversy requirement of AS 22.10.020(g) has not been

---

46. *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007).

47. We recently employed this canon in *Alaskans for a Common Language*, in which we construed the Official English Initiative as only applying to "official" acts of government. *Id.* Likewise, in *State v. Blank*, 90 P.3d 156 (Alaska 2004), we construed a statute to include constitutional requirements that we set forth in an earlier case. *Id.* at 162 ("In the context of the facts presented in this case, we choose to construe subsection .031(g) to incorporate, in addition to the statutory requirements, the exigent circumstances requirements discussed in *Schmerber [v. State*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)].").

48. 56 P.3d 1046, 1048 (Alaska 2002) (plurality opinion).

49. *Id.* at 1064–66.

50. 156 P.3d 1130, 1132 (Alaska 2007).

51. *Id.* at 1133–34.

52. *Id.*

53. *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001).

satisfied because this case is not ripe for decision. In striking the balance required by the ripeness doctrine, the risks of adjudicating the constitutionality of AS 11.71.060 in a hypothetical setting outweigh the negligible hardships that the plaintiffs will face if we do not decide this issue. On the "need for decision" side of the scale, plaintiffs' need is slight because their conduct, regardless · of how this court might rule, would still be criminal under federal statutes which impose much more severe penalties than the amended state statute. On the risk side of the scale, our concerns echo those that we expressed in *Brause:*

> Without more immediate facts it will be difficult to deal intelligently with the legal issues presented.... In order to grant relief ... [this] court would have to declare a statute unconstitutional. This is, of course, a power that courts possess. But it is not a power that should be exercised unnecessarily, for doing so can undermine public trust and confidence in the courts and be interpreted as an indication of lack of respect for the legislative and executive branches of government. Further, ruling on the constitutionality of a statute when the issues are not concretely framed increases the risk of erroneous decisions.[54] ·

In accordance with these views, the superior court's judgment in favor of the ACLU, Jane Doe, and Jane Roe, is VACATED and this appeal is DISMISSED.

CARPENETI, Justice, with whom WINFREE, Justice, joins, dissenting.

CARPENETI, Justice, with whom WINFREE, Justice, joins, dissenting.

Alaska law on ripeness historically has kept the barriers to the courtroom low in order to favor access for Alaska's citizens to Alaska courts. In this, we have pointedly differed from our counterparts in the federal courts. Today's opinion, relying on federal

law that we have previously declined to follow, ·retreats from that long-held stance. While that fact alone is troubling enough, today's opinion is made more problematic by its devaluation of the protections that the Alaska Constitution offers to the citizens of this state, its overstatement of the decisional risks of considering the appeal before us, and its rejection of the strong and united position of the parties before the court that we should decide this case. For these reasons, I believe that we should heed the requests of all parties—the State of Alaska as well as the Alaska citizens who bring the action—and decide this case now.

## I.  Today's  Opinion  Runs  Counter  to Long–Established Alaska Law.

Today's opinion begins by stating: "Under the ripeness doctrine, the constitutionality of a statute generally may not be challenged as an abstract proposition." In Alaska, however- er, we routinely accept and decide cases raising the constitutionality of statutes as an abstract proposition. We have done so in virtually every major constitutional case to come before us in recent years. We most recently did so in *State v. Planned Parenthood of Alaska,*[1] a case challenging the constitutionality of a statute creating criminal penalties for doctors who perform abortions on minors without parental consent or judicial authorization. No plaintiff doctor had been prosecuted, but we had little difficulty reaching· the merits.[2] In *Alaskans for a Common Language, Inc. v. Kritz,*[3] we decided the constitutionality of a statute requiring the government to use the English language in various circumstances.[4] Plaintiffs, non-English speaking and bi-lingual Alaskans and government workers, had not been sued under the statute.[5] That opinion did not even discuss ripeness. Indeed, illustrative of Alaska's lenient ripeness jurisprudence, of eighteen cases since 2001 that raised abstract

---

**54.**  *Id.* at 360.

**1.**  171 P.3d 577 (Alaska 2007) (*Planned Parenthood II* ).

**2.**  *Id.* at 580; *see also State v. Planned Parenthood of Alaska,* 35 P.3d 30, 34 (Alaska 2001) (*Planned Parenthood I* ).

**3.**  170 P.3d 183 (Alaska 2007).

**4.**  *Id.* at 187.

**5.**  *Id.* at 187–88.

constitutional issues, we reached the merits in seventeen, often without even discussing ripeness.[6] In only one did we uphold a ripeness challenge.[7]

Why has this court consistently declined to use ripeness as a way to avoid deciding cases? It is because of our deep-seated commitment to the idea that the doors of Alaska's courts should be open to its citizens to the greatest extent possible. As we said in

*Thomas v. Anchorage Equal Rights Commission*,[8]—a case where we found the dispute to be ripe after the Ninth Circuit had declined to hear it on ripeness grounds— "[r]ipeness is an aspect of standing, and we have often noted that Alaska's standing requirements are more lenient than their federal counterpart, since they favor ready access to a judicial forum." [9] We interpret standing, and by extension ripeness, leniently in order to facilitate access to the courts:

6. In addition to *Planned Parenthood II* and *Alaskans for a Common Language, see, e.g., Alaska Pub. Interest Research Group v. State*, 167 P.3d 27 (Alaska 2007) (deciding facial challenge by public interest group to constitutionality of statute creating Alaska Workers' Compensation Appeals Commission without even discussing ripeness); *State, Dep't of Fish & Game v. Manning*, 161 P.3d 1215 (Alaska 2007) (deciding facial challenge to constitutionality of statute establishing criteria for subsistence hunting permit; hunter had been denied permit but court addressed facial challenge even though he might have had "as-applied" challenge); *State v. Native Village of Nunapitchuk*, 156 P.3d 389 (Alaska 2007) (deciding facial challenge to constitutionality of statute awarding attorney's fees in public interest cases without even discussing ripeness); *City of Skagway v. Robertson*, 143 P.3d 965 (Alaska 2006) (deciding facial challenge, without discussing ripeness, to city ordinance limiting in-person solicitation by plaintiffs who owned businesses that used in-person solicitation, although they had not yet been prosecuted or threatened with prosecution); *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000 (Alaska 2006) (deciding, without discussing ripeness, facial challenge to constitutionality of proposed alcohol tax by plaintiffs who sold alcohol but on whom tax had not yet been assessed); *Grunert v. State*, 109 P.3d 924 (Alaska 2005) (deciding, without discussing ripeness, facial challenge to constitutionality of regulation creating cooperative fishery and allocating salmon quota to fishery brought by fishers who chose not to join cooperative); *Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937 (Alaska 2004) (deciding constitutionality of statute prohibiting landlord discrimination against unmarried tenants brought by landlords who had not yet been prosecuted under the statute; holding landlords' claims ripe, although Ninth Circuit had previously held them unripe); *Treacy v. Municipality of Anchorage*, 91 P.3d 252 (Alaska 2004) (deciding facial challenge to constitutionality of municipal curfew on minors; even though minors had been arrested, court evaluated statute on its face without using specific facts of arrests); *Myers v. Alaska Hous. Fin. Corp.*, 68 P.3d 386 (Alaska 2003) (deciding facial challenge to constitutionality of statute selling right to future income from tobacco settlements and using sale proceeds for rural schools); *Evans ex rel. Kutch v. State*, 56 P.3d

1046 (Alaska 2002) (deciding facial challenge to constitutionality of tort reform legislation brought by "allegedly injured persons who have filed or plan to file tort actions" over state's objection that claims were unripe); *State v. Planned Parenthood of Alaska* (*Planned Parenthood I*), 35 P.3d 30 (Alaska 2001) (deciding facial constitutional challenge brought by doctors and abortion provider to statute criminalizing performance of abortion for minor unless parental consent or judicial authorization obtained); *Sampson v. State*, 31 P.3d 88 (Alaska 2001) (deciding facial challenge to constitutionality of manslaughter statute prohibiting assisted suicide brought by terminally ill patients; no doctors had yet been prosecuted for assisting suicide); *State v. Planned Parenthood*, 28 P.3d 904 (Alaska 2001) (deciding facial challenge to constitutionality of regulation denying funding for medically necessary abortions brought by abortion provider, without discussing whether or not provider's patients had yet been denied funding under statute); *Anchorage Police Dep't Employees Ass'n v. Municipality of Anchorage*, 24 P.3d 547 (Alaska 2001) (deciding facial challenge to constitutionality of city policy subjecting public safety employees to random drug tests brought by municipal employees, none of whom had yet been tested).

Even removing the cases in which the challenged statute did not regulate conduct or grant or deny a benefit—*Alaska Pub. Interest Research Group, Grunert*, and *Myers*—it remains that in the vast majority of abstract constitutional challenges, this court has eschewed holding the case not ripe and has decided the case.

And in the cases that are most directly analogous to our case—pre-enforcement facial challenges to criminal statutes (*Planned Parenthood I, Planned Parenthood II, City of Skagway, Thomas,* and *Sampson*)—we have never dismissed on ripeness grounds, instead deciding every case on its merits.

7. *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358–61 (Alaska 2001) (declining to address broad constitutional challenge to statute prohibiting same-sex marriage brought by same-sex couple).

8. 102 P.3d 937.

9. *Id.* at 942.

"The basic idea ... is that an identifiable trifle is enough for standing to fight out a question of principle." [10] Today's opinion relies on federal law,[11] forgetting our repeated statements that our approach to ripeness differs from the federal approach: "We have consistently found this difference [between the federal and Alaska approaches] to be important, emphasizing the need to follow our 'own unique ... jurisprudence if Alaska standing doctrine is to retain its quality of relative openness.' " [12] By ignoring Alaska's more open ripeness jurisprudence, today's opinion changes our law on standing dramatically and, in my view, for the worse. The court closes its doors where previously they were open.

**II. In Assessing the Hardships the Parties Face if the Court Refuses To Decide this Case, Today's Opinion Devalues Alaska Constitutional Protections and Incorrectly Assumes that the Likelihood of Federal Prosecution Is Equal to the Likelihood of State Prosecution.**

**A. Devaluation of Alaska constitutional protections**

In examining the first question under the ripeness doctrine—the hardships that the parties face if the case is not decided in advance of a criminal prosecution—today's opinion concludes that "the risk of criminal liability argument rings hollow" because marijuana possession is already criminal under federal law. This argument both devalues the significance of Alaska constitutional protections and misapprehends the likelihood of federal prosecution of violation of federal marijuana laws in Alaska.

The risk of a possibly unconstitutional prosecution under Alaska law is independent of any possible federal prosecution. The state government and the federal government are independent sovereigns, and have the power to punish the same conduct independently of each other.[13] Thus, even if the federal government prosecutes Jane Doe for her possession of marijuana, Alaska may prosecute her as well under AS 11.71.060.[14] If the state prosecution is unconstitutional, her injury from that prosecution does not change even if she is also prosecuted by the federal government. It is no answer to the shame, expense, and embarrassment of a possibly unconstitutional state prosecution that she also risks federal prosecution.

**B. Incorrect assumption regarding risk of federal prosecution**

In addition, and perhaps even more important, the vastly smaller danger of federal prosecution (compared to state prosecution) must be considered. As a practical matter, the risk of federal prosecution for simple possession of marijuana in Alaska appears to be virtually nil. In terms of actual prosecutions, for example, the United States brought zero misdemeanor drug possession cases in Alaska in fiscal year 2005 [15] and less than ten

---

**10.** *Planned Parenthood I,* 35 P.3d at 34 (quoting *Wagstaff v. Superior Court, Family Court Div.,* 535 P.2d 1220, 1225 & n. 7 (Alaska 1975)).

**11.** *See* Opinion at 368.

**12.** *Thomas,* 102 P.3d at 942 (quoting *Bowers Office Prods., Inc. v. Univ. of Alaska,* 755 P.2d 1095, 1097 n. 5 (Alaska 1988)).

**13.** *See Booth v. State,* 903 P.2d 1079, 1085 (Alaska App.1995) ("[I]f a person commits a crime that is prohibited by both federal and state law, both the federal government and the state government can separately prosecute the person for that crime."). Previously AS 12.20.010 prevented the state from prosecuting conduct already prosecuted by the federal government, but the legislature repealed this law last session. *See* Ch. 75, § 40, SLA 2008.

**14.** The state is clear that its position "poses a sufficient threat to the individual plaintiffs to render the dispute live." State's Supplemental Memorandum on Ripeness at 5, *State of Alaska v. Am. Civil Liberties Union of Alaska,* No. S–12370 (Alaska July 15, 2008). It notes that it "has never disclaimed a general intent to prosecute the possession of a small amount of marijuana in the home." (*Id.*) (The state also notes that, "in the spirit of conforming to the rule of law, the Attorney General has advised all Alaska law enforcement agencies not to change their current marijuana enforcement policies until this case is resolved." (*Id.*)).

**15.** Bureau of Justice Statistics, Federal Justice Statistics Resources Center, FY 2005, Defendants Charged in Criminal Cases, Alaska, http://fjsrc. urban.org (follow "Defendants charged in criminal cases" hyperlink, select year, select "filing

cases each year in fiscal year 2006 and fiscal year 2007.[16] During the three-year period ending December 31, 2008, the state filed approximately 3,166 cases [17] alleging violation of AS 11.71.060 (Misconduct Involving a Controlled Substance in the Sixth Degree—possession of marijuana). These differences in levels of prosecution are not surprising, given that enforcing Alaska's drug laws is a high priority of both state and local law enforcement in Alaska,[18] while the FBI's "Investigative Priorities" for the Alaska Division does not even list drug enforcement among ten enumerated priorities.[19] Finally, there are only approximately fifty federal agents regularly assigned in Alaska in three locations,[20] whereas state and municipal commissioned officers—who are charged with enforcing state drug laws—number approximately 1,200 [21] spread over the entire state, in approximately ninety-six locations.[22] In pointing to the possibility of federal prosecution as a basis for discounting the difficult choice that both the state and the plaintiffs so eloquently elucidate, today's opinion ignores this reality: The danger of federal prosecution for simple marijuana possession in Alaska is vanishingly low, whereas the danger of state prosecution for simple possession is real and substantially higher.

In this regard, today's opinion misreads *Ravin v. State*[23] in stating that "plaintiffs'

---

offense," select "Drug possession—misdemeanor," select "Add Column," select "U.S. Federal Judicial District," select "Alaska," select "Display as: HTML") (last visited Feb. 25, 2009).

16. Bureau of Justice Statistics, Federal Justice Statistics Resources Center, FY 2006 Defendants Charged in Criminal Cases, Alaska, FY 2007, Defendants Charged in Criminal Cases, Alaska, http://fjsrc.urban.org (follow "Defendants charged in criminal cases" hyperlink, select year, select "filing offense," select "Drug possession-misdemeanor," select "Add Column," select "U.S. Federal Judicial District," select "Alaska," select "Display as: HTML") (last visited Feb. 25, 2009). An explanatory note for FY 2006 and FY 2007 states: "Cell contains at least one case but fewer than 10 cases. The exact value has been withheld to prevent to deductive disclosure of personal identities." Federal crime statistics that distinguish between misdemeanor marijuana possession (violation of 21 U.S.C. § 844(a) (possession of marijuana)) and misdemeanor possession of other drugs are not available. Thus, these numbers most likely overstate the number of federal misdemeanor marijuana cases.

17. Compilation from Alaska Court System Court-View data and Rural User Group courts (run Feb. 20, 2009).

18. *See, e.g.*, Alaska State Troopers, Alaska Bureau of Alcohol and Drug Enforcement Mission Statement, http://www.dps.state.ak.us/ast/abade (last visited Feb. 25, 2009); Municipality of Anchorage, Alaska, Anchorage Police Department, Drug Information (drug tip hotline), http://www.muni.org/apd2/drugs.cfm (last visited Feb. 25, 2009); Fairbanks Police Department, About the Department (drug investigator and detective positions), http://ci.fairbanks.ak.us/departments/police/about.html (last visited Feb. 22, 2009).

19. These priorities are, in order: (1) protecting the United States from terrorist attack; (2) protecting this country from foreign intelligence operations and espionage; (3) protecting this country from cyber-based attacks and high-technology crimes; (4) combating public corruption; (5) protecting civil rights; (6) combating transnational and national criminal organizations and enterprises; (7) combating major white-collar crime; (8) combating significant violent crime; (9) supporting federal, state, local, and international partners; and (10) upgrading technology to succeed in the FBI mission. FBI Alaska, Investigative Priorities of the Alaska Division, http://anchorage.fbi.gov/investigative.html (last visited Feb. 22, 2009). The investigative priorities of the FBI appear to mirror the prosecutorial priorities of the United States Attorney's Office for the District of Alaska. The homepage of the Criminal Division of that office notes: "The Criminal Division prosecutes mainly felony offenses. An active misdemeanor docket does exist, however, and consists of the prosecution of minor offenses *occurring in federal parks or other federal enclaves*." The United States Attorney's Office, District of Alaska, Criminal Division, http://www.usdoj.gov/usao/ak/criminal/index.html (last visited Feb. 26, 2009) (emphasis added). Prosecutions of persons in their homes for misdemeanor marijuana possession would appear not to fall within the described activities.

20. FBI Alaska, Message from the Special Agent in Charge, http://anchorage.fbi.gov/sac.html (last visited Feb. 26, 2009).

21. *COPS Funds in Alaska*, 21 ALASKA JUSTICE FORUM 3(2005), *available at* http://justice.uaa.alaska.edu/forum/21/4winter2005/214winter05.pdf. (COPS is an acronym for the federal Office of Community Oriented Policing Services.) ("According to the Alaska Police Standards [Council], at the end of February 2005, there were 1190 certified sworn officers in Alaska.").

22. *See id.* at 366.

fears ... may be speculative and overstated."[24] (And, indeed, the state has expressed identical fears. *See infra* at pages 381–82.) Today's opinion notes that in 1975, when *Ravin* was decided, most police departments generally were not interested in pursuing individuals solely for possession in the home of small amounts of marijuana for personal use.[25] But the language quoted from *Ravin*—"[s]tatistics indicate that few arrests for simple possession occur in the home *except when other crimes are simultaneously being investigated* "[26]—illustrates why the presence of the statute at issue in this case poses such a difficult choice for persons such as plaintiffs. Consider the individual who comes home one evening to find a window broken in his home and the door slightly ajar. The individual knows that he left a small container of marijuana in the open on his coffee table. He must now decide whether he should call the police and expose himself to prosecution for possession of less than one ounce of marijuana in his home, or enter the house by himself and risk encountering an intruder. Or consider a wife who has retreated to her bedroom after an altercation with her husband in which he hit her. She knows that there is marijuana and paraphernalia in the open in the kitchen. She must decide whether to call the police and report the domestic violence incident, and thereby expose herself to possible prosecution for possession of marijuana, or face her abuser again by herself.

In short, persons currently engaging in activities that this court has previously declared protected under the Alaska Constitution will be chilled in the exercise of those activities by the very real risk of a state prosecution without the opportunity—which all sides to this dispute say they should have—of testing the statute in advance. And, because state and local law enforcement authorities are the ones that Alaskans have recourse to in the event of emergency, the risk of discovery of those possibly protected activities pertains to state, not federal, personnel.

## III. Today's Opinion Overstates the Risks of Deciding.

After incorrectly concluding that there is little need for a decision in advance of enforcement of the statute, the court turns to the risks of decision.[27] It then concludes—contrary to the positions of all the parties in this case—that the "normal risks associated with deciding hypothetical cases are present."[28] But the opinion greatly exaggerates this risk. Indeed, we have previously decided a case in virtually identical circumstances raising identical issues: We noted in *Ravin*, "[t]he record does not disclose *any* facts as to the situs of Ravin's arrest and his alleged possession of marijuana."[29] *Ravin* is the case that the current legislation aims to overturn. It is difficult to understand how the current legislation cannot be properly analyzed in the absence of specific facts while, at the same time, the entire controversy before us arose in the absence of specific facts.

Today's opinion quotes extensively from *Brause v. State, Department of Health & Social Services*,[30] the only case since 2000 in which we declined on ripeness grounds to reach the merits of a constitutional dispute. The plaintiffs in *Brause*, a same-sex couple who were unable to marry, challenged AS 25.05.013(b), which provided that a "same-sex relationship may not be recognized by the state as being entitled to the benefits of marriage." Plaintiffs attacked this statute generally, but "lacking in [the plaintiffs'] brief is any assertion that they have been or ... will be denied rights that are available to married partners."[31] *Brause* is distinguishable from today's case in many ways.

23. 537 P.2d 494 (Alaska 1975).

24. Opinion at 371.

25. *Id.*

26. *Id.* n. 36 (quoting *Ravin*, 537 P.2d at 511 n. 70) (emphasis added).

27. Opinion at 371.

28. *Id.*

29. 537 P.2d at 513 (emphasis added).

30. 21 P.3d 357 (Alaska 2001).

31. *Id.* at 360.

Unlike the present case, *Brause* truly lacked a sufficient factual setting in which to frame the dispute. The plaintiffs in *Brause* challenged the constitutionality of a statute prohibiting marriage of same-sex partners. They claimed the statute denied them some 115 rights afforded to married couples, but never challenged the denial of any specific benefit to them. We noted: "[L]acking in Brause and Dugan's brief is any assertion that they have been or in their circumstances that they will be denied rights that are available to married partners."[32] Unlike the *Brause* plaintiffs, the plaintiffs before us now identify a discreet right denied them by operation of the statute.

In the present case, the constitutional issue is sufficiently framed: (1) adult plaintiffs propose to use (2) small amounts of marijuana (3) in their homes. No further facts are needed: Waiting for an individual to be arrested and charged with possession of a small amount of marijuana in his or her home would not provide us with any necessary additional facts. And unlike the present case, the state in *Brause* argued that the case was not ripe. Today's opinion quotes *Brause* to the effect that "[d]efendants ... should not be forced to bear the burdens of litigation without substantial justification";[33] but the defendant in this case *seeks* to "bear the burdens of litigation"—the state vigorously asserts that we should hear this case because it is ripe. In *Brause*, it was unclear even which constitutional right(s) the plaintiffs claimed had been violated,[34] whereas today the claim is clear: The new statute violates the right to privacy set out in *Ravin*. And the language from *Brause* relied on in today's opinion is not applicable to our case:

*Brause* points out that courts should not render decisions absent a genuine need to resolve an actual dispute. As shown above, there is an actual dispute here about the constitutionality of AS 11.71.060 that is directly affecting the plaintiffs.

Finally, unlike *Brause*, this is not a case of first impression. We first addressed this issue over thirty years ago, setting out the standard for constitutional challenges to drug possession laws. Since we decided *Ravin*, we and the court of appeals have applied the standard for constitutional challenges to drug and alcohol possession statutes at least a dozen times.[35] In *Ravin*, we even laid out the manner in which a subsequent legislature might take a second look at the issue in the event of changes in scientific or other information.[36] And here, the legislature and all of the parties have endeavored to follow the path we set out in *Ravin*. All of the parties now urge us to take the case.[37] In all of these ways, *Brause* is different from the present case. In sum, *Brause* offers little support for the proposition that this case is not ripe.

The court next turns to two specific reasons in support of its claim that the risks of decision outweigh the need for decision. Neither bears up under scrutiny. First, today's opinion argues that concrete facts may aid in making a decision. The opinion claims that because the plaintiffs do not maintain that the statute is unconstitutional in all circumstances—plaintiffs claim it is unconstitutional only insofar as it proscribes the possession of a small amount of marijuana for personal use by an adult in the adult's

**32.** *Id.*

**33.** Opinion at 371.

**34.** 21 P.3d at 360 (noting that plaintiffs claimed that challenged statute denied them "at least 115 separate rights" and concluding that, "[g]iven the level of abstraction of this case as presented," dismissal for lack of ripeness was appropriate (internal quotation marks omitted)).

**35.** *See, e.g., State v. Erickson,* 574 P.2d 1, 12 (Alaska 1978); *Brown v. State,* 565 P.2d 179, 180 (Alaska 1977); *Belgarde v. State,* 543 P.2d 206 (Alaska 1975); *Garhart v. State,* 147 P.3d 746,

750–51 (Alaska App.2006), *Hotrum v. State,* 130 P.3d 965, 967, 969–70 (Alaska App.2006); *Noy v. State,* 83 P.3d 545 (Alaska App.2003); *Westbrook v. State,* 2003 WL 1732398 (Alaska App.2003); *Noy v. State,* 83 P.3d 538 (Alaska App.2003); *Sorenson v. State,* 2001 WL 830709 at *1 (Alaska App.2001); *Walker v. State,* 991 P.2d 799, 801–03 (Alaska App.1999); *Cleland v. State,* 759 P.2d 553, 556–58 (Alaska App.1988); *Harrison v. State,* 687 P.2d 332, 336–39 (Alaska App.1984).

**36.** *See infra* at notes 50–51 and accompanying text.

**37.** *See infra* at pp. 381–82.

home [38]—we should not entertain the current challenge because adjudication of an actual case "might cast these categories in a different light." [39] That possibility does not justify the conclusion that the case is not ripe: It exists in every pre-enforcement challenge to the constitutionality of a statute. Here, the state needs to know whether the new statute is constitutional or whether, conversely, *Ravin* retains vitality.[40] The plaintiffs need to have the same question answered, or face the difficult and unfair choice of foregoing possibly constitutionally protected activity or risking criminal penalties. As the state makes clear in its briefing to this court:

> Because the lack of factual development in this case has no bearing on the legal principles that control the constitutionality of the statutes, further factual development will not "significantly advance [the court's] ability to deal with the legal issues presented." *No set of facts arising from future implementation of this statute will make the constitutional challenge any riper than it is now.*[41]

**38.** These circumstances are those set out in *Ravin*, 537 P.2d 494, 498–500 (Alaska 1975).

**39.** Opinion at 381–82.

**40.** Indeed, today's opinion may put enforcement of the new laws on hold indefinitely. Following enactment of the current law, the attorney general issued a law enforcement bulletin that contained the following:

> HB 149 contains several key findings by the Legislature about problems caused by today's potent Alaska marijuana.... [W]e believe [these findings] will convince the Alaska Supreme Court that marijuana has changed dramatically since the landmark 1975 decision in *Ravin v. State*.
> But press reports are somewhat misleading in saying that the new laws "re-criminalize" possession of smaller amounts of marijuana by adults in private. That's not entirely accurate. The new laws do not alter the decisions by the Alaska appellate courts that possession of small amounts by adults in homes is constitutionally protected (*Ravin*), that the amount of marijuana covered by *Ravin* is up to four ounces (*Noy*).
> The state will vigorously litigate all these legal issues because it's important that the courts overrule these prior decisions. The Legislature's findings about marijuana set the stage for that to happen, but they don't do it automatically. We live under the rule of law, and full implementation of the marijuana laws is ultimately up to the courts. Therefore, ...

In an effort to bolster the argument that the risks of deciding are high, today's opinion notes our decision in *Evans ex rel. Kutch v. State*[42] and the subsequent need to reverse a portion of the *Evans* decision in *Sands ex rel. Sands v. Green*.[43] But the experience of these cases lends no support to the argument against ripeness. The constitutional challenge in *Evans* was to an extremely wide-ranging set of legislative enactments under the broad rubric of "tort reform." [44] The current case, in comparison, is much more limited: Plaintiffs seek to reaffirm this court's holding in *Ravin* that an adult in Alaska has the constitutional right to possess for personal use a small amount of marijuana in his or her home. The *Evans/Sands* experience does not suggest that a tightly-focused constitutional issue that all parties want and need to have resolved should remain undecided. And while today's opinion "take[s] counsel from *Sands*," [45] it seems highly unlikely that today's court really believes that it should not have decided *Evans*, a decision

> until you are advised differently by the District Attorney in your region, there is no basis for changing law enforcement policies for the investigation of non-public possession of less than four ounces of marijuana by adults. Attorney General's Enforcement Bulletin, Alaska Dep't of Law, New Marijuana Laws (May 12, 2006) (emphasis in original).

**41.** State's Supplemental Memorandum on Ripeness, *supra* n. 14, at 12–13 (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (emphasis added)).

**42.** 56 P.3d 1046 (Alaska 2002).

**43.** 156 P.3d 1130 (Alaska 2007).

**44.** The "many new tort law provisions" in the new act included:

> caps on noneconomic and punitive damages, a requirement that half of all punitive damage awards be paid into the state treasury, a ten-year "statute of repose," a modified tolling procedure for the statute of limitations as applied to minors, comparative allocation of fault between parties and non-parties, a revised offer of judgment procedure, and partial immunity for hospitals from vicarious liability for some physicians' actions.

*Evans*, 56 P.3d at 1048.

**45.** Opinion at 372–73.

which, for better or worse,[46] went a long way[47] toward resolving challenges to a major overhaul of Alaska's tort system.

Second, today's opinion concludes that the matter is not ripe partly because the case is "a high-profile case in which the general public as well as the executive and legislative branches of government are interested."[48] But these factors do not counsel dismissal on ripeness grounds. To the contrary, the high-profile nature of the case argues in favor of reaching and deciding the merits. As the Supreme Court of California has held, "the ripeness requirement does not prevent us from resolving a concrete dispute if the consequence of a deferred decision will be lingering uncertainty in the law, *especially when there is widespread public interest in the answer to a particular legal question.*"[49]

A related concern strongly counsels in favor of finding that the case is ripe: In *Ravin* we noted that "[r]esearch is continuing extensively,"[50] suggesting the possibility that this constitutional issue might have to be reexamined if the scientific bases of the opinion were to be undercut by changes in science's understanding of the harmfulness of marijuana or by changes in the chemical makeup of the drug being sold or by a similar change. But we also noted that "mere scientific doubts will not suffice. The state must demonstrate a need based on proof that the public health or welfare will in fact suffer if the controls are not applied."[51] It is clear that the legislature, in holding the hearings it did in the course of adopting the current legislation, attempted to comply with the implied directive of this court. No less than the executive—which has argued strongly in favor of our deciding this case—it can be expected that the legislature would also favor a decision rather than a ripeness dismissal.

## IV. All Parties Have Asked Us To Decide this Case.

We have seen that, contrary to the suggestion in today's opinion, our normal practice is to decide even abstract challenges to statutes. That is so even though, in many such "facial challenges," the party defending the statute will argue that the case is not ripe and that we should wait for a case applying the statute to a specific set of facts.[52] But in today's case, *both* parties have asked—indeed, implored—us to decide this case now.

The state, which might have been expected to argue that the case is not ripe,[53] instead strongly argues that the case is ripe and should be decided now:

*This case is ripe because the need for a decision is compelling and the risks are few.* Without a decision, the individual plaintiffs who have challenged the constitutionality of AS 11.71.060 face the choice of changing their current conduct—previous-

---

**46.** The decision was from an equally divided court, and prompted separate dissents. *Id.* at 1070 (Bryner, J., dissenting in part); *id.* at 1079 (Carpeneti, J., dissenting in part).

**47.** Because *Evans* was the product of an evenly-divided court, it was necessary for the court to decide *Anderson v. Cent. Bering Sea Fishermen's Ass'n,* 78 P.3d 710 (Alaska 2003), which resulted in another evenly-divided court, and *Reust v. Alaska Petroleum Contractors, Inc.,* 127 P.3d 807 (Alaska 2005), a 3–2 decision, before the constitutionality of most of the legislature's tort reform efforts was finally resolved. But each later case built upon the court's holdings in *Evans,* and each advanced the inquiry.

**48.** Opinion at 372–73.

**49.** *Hunt v. Superior Court,* 21 Cal.4th 984, 90 Cal.Rptr.2d 236, 987 P.2d 705, 716 (1999) (citing *Pac. Legal Found. v. Cal. Coastal Comm'n,* 33 Cal.3d 158, 188 Cal.Rptr. 104, 655 P.2d 306, 313–14 (Cal.1982)) (emphasis added).

**50.** *Ravin v. State,* 537 P.2d 494, 510 (Alaska 1975).

**51.** *Id.* at 511.

**52.** *See, e.g., Thomas v. Anchorage Equal Rights Comm'n,* 102 P.3d 937, 942 (Alaska 2004); *Evans ex rel. Kutch v. State,* 56 P.3d 1046, 1080 n. 6 (Alaska 2002); *Brause v. State, Dep't of Health & Soc. Servs.,* 21 P.3d 357, 360 (Alaska 2001).

**53.** Indeed, in the State's Supplemental Memorandum on Ripeness, the state acknowledged that it "generally ... is an ardent advocate for the position that the Court should not consider constitutional challenges without concrete facts," but went on to say that "the present challenge to AS 11.71.060 is uniquely suited to pre-enforcement adjudication." State's Supplemental Memorandum on Ripeness at 12, *supra* n. 14.

ly authorized by a constitutional decision of this Court—or risk criminal liability if they fail to comply with the statute. Further, deciding the statute's constitutionality at this pre-enforcement stage poses little risk of an imprudent or unnecessary decision, because the statute's validity is governed by general principles rather than by circumstances particular to an individual's conduct.[54]

As the state notes, requiring an actual prosecution before hearing a case "may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity."[55] Further:

> When the prohibited act is a crime, conditioning judicial review on the existence of an actual prosecution burdens a specific individual with a challenge that could be prohibitively expensive.[note 27] In addition, a criminal prosecution could be damaging to a person's job and personal relationships. A person in this situation should not be required to sacrifice his social standing in order to challenge a new criminal law as invalid. When the sanction is criminal penalties, a person should be allowed to choose early adjudication.[56]

---

[note 27] A practical consideration that should not be overlooked is that the plaintiffs in this case have had the resources of the ACLU, including several attorneys from the ACLU's Drug Law Reform Project, based in California, each of whom had significant experience litigating legal issues in drug cases. The five ACLU attorneys who worked on this case had experience ranging from three to nineteen years (average: nine years), and documented more than 520 hours of attorney time spent on the superior court case alone. Many additional hours of attorney work at the superior court level by the ACLU Drug Law Reform Project on this case were not accounted for.

The plaintiffs echo the state's argument that this case is ripe for decision. They too highlight the unfair choice that they face—forego a previously recognized privacy right or risk prosecution under a law of questioned constitutionality: "[A] constitutional challenge to a criminal statute is ripe where plaintiffs must choose between risking arrest or suffering deprivations of their constitutional rights if they do not alter their conduct."[57]

## V. Conclusion

Our case law strongly supports the proposition that this controversy is ripe for resolution. The legislature has done its part to bring this long-running dispute back to the courts to be resolved. The executive has weighed in, strongly requesting that we decide the dispute. The plaintiffs sued to get an answer. The issue is clear: Does the Alaska Constitution prohibit the current legislation to the extent that it criminalizes possession of a small amount of marijuana in an adult's home for personal use? No other facts need be developed in order for the parties to brief the issue—which they have done exceedingly well—and for the courts to decide it. There is a pointed need—on the part of the state as well as the plaintiffs-for a decision; and no harm would result from our rendering one. In these circumstances, I must respectfully dissent from the court's refusal, on ripeness grounds, to decide this case.

54. *Id.* at 2 (emphasis added).

55. *Id.* at 6 (quoting *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

56. *Id.* at 8–9 (citations omitted).

57. Appellees' Supplemental Memorandum Regarding Ripeness at 1, *State of Alaska v. Am. Civil Liberties Union of Alaska,* No. S–12370 (Alaska July 15, 2008).